MARVIN, Judge.
The record of this appeal of a negligent homicide conviction by a jury contains only the scantest of facts, which might, in a civil action, permit the inference that defendant's conduct caused the death of a passenger in the vehicle into which defendant’s automobile collided.
The evidence is insufficient to convict in a criminal action, however, because the scant facts do not prove the inference beyond a reasonable doubt as the constitution and the law requires. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LRS 15:271, 438.
Accordingly, and reversing the trial court’s post-verdict ruling, we set aside the conviction and grant defendant’s motion for post-verdict judgment of acquittal. CCrP Art. 821 B, C. We do not reach other errors assigned by defendant.
FACTS
By police who investigated the accident and by others, the State proved that defendant, in a criminally negligent manner, lost control of his Mustang automobile on a wet highway, skidding it across the center line and back into his lane of travel where it struck the left rear of a station wagon proceeding in the same direction. The impact propelled the station wagon across the center line and into the face of an approaching Chevrolet that collided with the right side of the station wagon. The State proved that the station wagon was occupied by a husband-driver and wife-passenger in the front seat.
The Chevrolet driver testified that he went to the driver’s side of the station wagon and saw that the driver was unconscious. He did not describe the condition of the passenger in the station wagon.
A passenger in the Mustang testified that she saw the station wagon driver *745 “bleeding,” but did not describe the condition of the station wagon passenger.
The husband-driver testified that he had no recollection of what happened, obviously because of his head injuries. He stated that Gaytha Melville was his wife and that he had been told that she was killed in the accident.
An investigating police officer testified that the driver was unconscious and that the female passenger, whom she learned was named Gaytha Melville, was “deceased.” The investigating officer did not otherwise describe any injuries or visible wounds to the passenger.
Another State witness at the scene before police arrived, testified that the station wagon passenger was breathing when he observed her, but did not otherwise describe her condition.
In denying defendant’s motion for post-verdict judgment of acquittal, the trial court emphasized trial testimony by a police officer that a blood sample was taken from the driver of the Mustang because that is “normally what we do when a fatality has occurred ...” While this testimony may prove that Mrs. Melville was dead, as the trial court concluded in denying defendant’s motion, the testimony is severely enervated by the testimony of that police officer’s supervisor that “it’s ... standard procedure that at any serious injury or fatality type accident, ... we run a blood test.”
The State’s witnesses described Mr. Melville’s injuries and the condition of the station wagon. No witness testified about or described any injuries to Mrs. Melville. Photographs in evidence show the scene and the damage to the automobiles involved in the accident. No photograph shows Mr. or Mrs. Melville in or out of the station wagon. No witness, such as ambulance or hospital personnel, testified about observing Mrs. Melville after she was removed from the station wagon. There is no medical testimony, no autopsy or postmortem medical or coroner’s report, and no lay testimony establishing what injuries, if any, Mrs. Melville sustained in the accident or whether any injury she is assumed to have sustained was the cause in fact of her death.
Defendant’s girlfriend, who initially, and in collusion with defendant, lied to police and told them she was driving the car, testified about overhearing defendant’s telephone conversation with his mother sometime after the accident. She said defendant told his mother, “we had a wreck. We’d killed somebody, but don’t worry about it, I [his girlfriend] was taking the rap for it.” (Our emphasis.) The State contends that this “admission” is sufficient to fulfill the State’s burden to prove guilt beyond a reasonable doubt. Jackson v. Virginia, supra; LRS 15:438. We disagree.
LAW
Cause-in-fact as well as proximate or legal cause of a homicide must be proved beyond a reasonable doubt and by the State, as a part of its constitutional and legal burden of proof, in the criminal case. See State v. Taylor, 463 So.2d 1274 (La. 1985); State v. Lilly, 468 So.2d 1154 (La.1985). The State must prove the homicide resulted from, or was caused by, produced by, the defendant’s conduct. The Legislature requires the State to prove facts that allow the inference of the causal link between the death and the conduct and does not allow the State to rely on the naked inference or bare assumption. See LRS 14:8, 9, 12, 32; LRS 15:271, 438; State v. Fontenot, 408 So.2d 919 (La.1981).
With crimes so defined as to require not merely conduct but also a specified result of conduct, the defendant’s conduct must be the “legal” or “proximate” cause of the result ... [I]t must be determined that the defendant’s conduct was the cause in fact of the result, which usually (but not always) means that but for the conduct the result would not have occurred. In addition, even when cause in fact is established, it must be determined that any variation between the result ... hazarded (with reckless or negligent crimes) and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible *746 for the actual result.... The tort treatment of legal cause in the cases of intentional or negligent torts is analogous but not necessarily controlling in criminal cases. LaFave & Scott, Handbook on Criminal Law, Causation, pp. 246-7.
To meet its burden of proof, the State, in a homicide case, must prove the death of the person alleged to have been killed and the criminal agency of someone as the cause [in fact and in law] of the death beyond a reasonable doubt. State v. Willie, 410 So.2d 1019 (La.1982). An accused cannot be convicted on his own uncorroborated admission without proof that a crime has been committed by someone. State v. Freetime, 334 So.2d 207 (La.1976).
Testimony about a defendant’s admission that “we had killed someone,” in other circumstances and where corroborated by other evidence establishing the corpus de-licti, may be legally sufficient to convict.
Here, we cannot infer that Mrs. Melville’s death was caused by injuries she received in automobile accident because there is absolutely no evidence in this record that Mrs. Melville was injured in any way in the accident. The fact of the collision does not allow the inference. The fact of her husband’s injury does not allow the inference. In these circumstances, there is simply no evidence to establish the corpus delicti that Mrs. Melville’s death was caused, factually and legally, from injuries she sustained in the vehicular collision. Here, there is no evidence as to Mrs. Melville’s physical condition before the accident or as to what injuries, if any, she sustained in the accident.
Even a strained view of this record in the light that most favorably supports the conviction distinguishes this case from State v. Winzer, 354 So.2d 533 (La.1978), wherein the fact and the cause of death were at issue on appeal. There the inference was supported by facts. Lay witnesses testified they saw defendant shoot the victim and saw the victim fall to the ground and his eyes “roll back” into his head. There a medical doctor on duty in the hospital emergency room where the victim was taken testified that the only injury he ob-
served was a gunshot wound in the victim’s flank and that the defendant was dead on arrival. Winzer, at pp. 534-5.
In its reasons denying defendant’s motion for post-verdict acquittal, the trial court noted the “preferable,” and we add, the relatively easy, way for the State to have proved the fact and the cause of death, but stated:
the jury heard evidence that a violent accident occurred ... that Mrs. Melville was a passenger in [the Melville] vehicle, and lived for a brief period following the accident and died. There was no evidence offered to the contrary and obviously the jury found that Mrs. Melville could not have died by any other means than by [the] accident.
As we have stated, causation, in fact and in law, between the conduct of a defendant and the homicide, becomes an essential element, especially in a homicide crime, which the State must prove beyond a reasonable doubt. Lilly, supra. There, on medical expert testimony about the probabilities of when symptoms of pneumococcal meningitis would have become obvious to a reasonable mother, Mrs. Lilly was convicted of negligent homicide. Her criminal negligence was her failure to summon medical attention for her child when the symptoms “had to have occurred ... several days prior to the child’s death,” according to the medical expert. The Supreme Court reversed the conviction because the State did not exclude the reasonable hypothesis [of the possibility] that the symptoms did not manifest themselves at the time and to the degree the expert thought probable. 468 So.2d at 1157, 1159.
The trial court’s quoted observation might be more properly made in a civil action where the burden of proof deals with probabilities, what is more likely, more probable than not. The observation is not legally proper in a criminal case. In short, the jury’s conclusion and the trial court’s observation, in essence, are nothing more than declarations that Mrs. Melville, more probably than not, died as a result of some injury or injuries she received in the automobile accident. The Legislature and *747 the constitution render such declarations legally improper in a criminal case because a person accused of a crime does not have to offer evidence to disprove probabilities. The State must prove all elements of the crime, including cause in fact and legal cause.
The trial court made this further observation at sentencing:
Mr. Phillips, I’m convinced that one of the reasons, if not the compelling reason, why that jury found you guilty is because of your attempt to cover up that you were the operator of that vehicle.
Defendant and his girlfriend initially did attempt to “cover up” who was driving the Mustang. Defendant’s girlfriend told the jury that she agreed to say she was driving because she had not been drinking and he had. Defendant explained that his girlfriend volunteered because she, and not he, had liability insurance that would pay, in part, for the harm done by the accident, and that he could see there was more harm done than he could pay for. We mention these circumstances, not to mitigate or excuse defendant’s conduct, but to illustrate the relative ease with which the State proved defendant had been drinking intoxicants and was driving in a criminally negligent manner.
The State could have met its burden of proving the cause of death beyond a reasonable doubt, also with relative ease. The Legislature has suggested one way in CCrP Art. 105, and has not precluded other ways in its enactments. The State has met its burden of proof in this respect in hundreds of reported homicide cases. In some homicide cases, the State has proved only the probabilities and has failed in its burden. See e.g., Lilly, supra; State v. Shapiro, 431 So.2d 372 (La.1982). This case is another circumstance where the State fails in the burden imposed on it by the Constitution and the Legislature.
The Legislature has not made criminal negligence a crime. LRS 14:7. The Legislature has declared that the only responsive verdicts to negligent homicide are either guilty or not guilty. CCrP Art. 814A(7).
DECREE
Under these circumstances, and, reversing the trial court’s post-verdict ruling, we set aside defendant’s conviction and hereby grant defendant’s post-verdict motion for a judgment of acquittal. CCrP Art. 821 B, C.
REVERSED AND RENDERED.