653 So.2d 1274 (1995)
STATE of Louisiana, Appellee,
v.
Charles Wiley BEASON and Kenneth Roy Sullivan, Jr., Appellants.
No. 26,725-KA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 1995.
Rehearing Denied May 4, 1995.
*1277 Bobby L. Culpepper, Jonesboro, for appellants.
Richard Ieyoub, Atty. Gen., Baton Rouge, Walter E. May, Jr., Dist. Atty., Jonesboro, C. Glenn Fallin, Asst. Dist. Atty., Arcadia, for appellee.
Before SEXTON, HIGHTOWER and STEWART, JJ.
SEXTON, Judge.
The defendants, Charles Wiley Beason, Kenneth Roy Sullivan, and Richard Sullivan, were convicted by a six-person jury of the negligent homicide of Lori Lee Jeter. The charge of negligent homicide arose out of a single car accident in which Lori Jeter was a passenger and Ronald Lee was the driver. Ronald Lee was being chased by the defendants when he failed to negotiate a curve and ran off the road.
The trial court granted a post-verdict judgment of acquittal to Richard Sullivan. The remaining two defendants were sentenced by the trial court. Defendant Charles Wiley Beason received three years at hard labor and defendant Kenneth Roy Sullivan received a suspended sentence of two years at hard labor and three years of supervised probation. Beason and Sullivan appeal their convictions and sentences. We affirm.

FACTS
On Saturday, September 26, 1992, Ronald Lee was dropping off the victim, Lori Lee *1278 Jeter, at her father's store, Jeter's Store, in Castor, Louisiana. Jeter's Store and the parking area around the store is a local hangout where people congregate on weekends. The defendants were parked in the lot adjacent to Jeter's Store.
When defendant Charles Beason saw Ronald Lee drive behind Jeter's Store, he sped around the corner of the store in his white Ford Thunderbird. Lee, perceiving a threat of great physical harm from Beason, raced around the corner of the store. With Lori Jeter in the passenger seat, Ronald Lee sped away from the store going south out of Castor on Highway 792. Kenneth Sullivan, also in the area and driving a blue Oldsmobile, with his brother, Richard Sullivan, as a passenger, chased Ronald Lee. Beason followed the chase. Beason and the Sullivan brothers testified that they wanted to talk to Ronald Lee about an altercation between Lee and the Sullivan's cousin which occurred the previous week.
Ronald Lee drove at a high rate of speed for about a half-mile south of Castor. Sullivan passed Ronald Lee and slowed down, attempting to cause Lee to stop. Lee made a sudden U-turn and proceeded back through Castor traveling north on Highway 792. Beason and Sullivan turned around and chased Lee through Castor. Beason was now directly behind Lee with the Sullivan brothers in the third car position. The defendants testified that they were traveling approximately 65 mph.
Approximately three miles out of Castor, Ronald Lee was unable to negotiate a curve in the road. His car went off the left side of the road and hit three trees before coming to a stop. The passenger side of the car was crushed and Lori Jeter was killed instantly. Ronald Lee received no serious injuries in the accident, but, according to the state's brief, was later killed in an unrelated incident.
The defendants testified that before reaching the curve where the accident occurred, they decided that Lee was not going to stop and they therefore would end the chase.
They allege that they stopped on the road near Pullig Pulp Yard located one mile south of what is called the "Parish Cut-Off Road." This cut-off road is located immediately before the beginning of the curve in which the accident occurred. The defendants decided to go to the "Blue Hole" near Lake Kepler, another local hangout, to meet some friends. They drove to the "Parish Cut-Off Road" and turned right. They testified that they did not pass the accident scene nor did they see the wreck from the cut-off road.
As the three cars passed through town, several people at Jeter's Store saw the defendants travelling at a high rate of speed. Jason Howell and Billy Young, eyewitnesses to the chase, testified that when the defendants passed under the caution light in which there was a bump in the road, their cars "hit bottom and sparks came from underneath the car."
Jason Howell, Michelle Hay, and Billy Young witnessed the chase through Castor and followed the chase in Hay's car as it proceeded north. They were about one mile behind the Sullivan brothers and were proceeding at approximately 60-65 mph. Howell testified that he saw the taillights of all three cars 100 yards south of the "Parish Cut-Off Road." As he approached the cut-off road, Howell was able to see the site of the accident because Ronald Lee's car was on fire. Howell did not pass the Sullivans or Beason on the way to the accident site nor did he see them stopped on the road.
Howell, Hay, and Young were the first to stop at the accident site. Howell and Young attempted to put out the fire while Hay drove back to Castor to get help. Howell testified that he and Young were able to put out the fire which was confined to the engine area, by throwing dirt and rocks on it.

DISCUSSION
The defendants have raised several trial errors as well as alleging the evidence was insufficient to support a guilty verdict. When issues are raised on appeal both as to *1279 the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first address the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992).

Assignment of Error No. 16: The trial court erred in failing to grant defendants' motion for a post-verdict judgment of acquittal as to Kenneth Sullivan and Charles Beason.
In their motion for post-verdict judgment of acquittal, the defendants alleged that the evidence, viewed in a light most favorable to the state, did not support a finding of guilty. The trial court granted a post-verdict judgment of acquittal as to Richard Sullivan, the passenger in the Sullivan vehicle, but denied the motion as to the other two defendants.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Negligent homicide is the killing of a human being by criminal negligence. LSA-R.S. 14:32. Criminal negligence exists when, "although neither specific nor general intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation of the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA-R.S. 14:12. Unlike general or specific criminal intent, criminal negligence is essentially negative. Rather than requiring that the accused intend some consequence of his actions, criminal negligence is found from the accused's gross disregard for the consequences of his actions. State v. Martin, 539 So.2d 1235 (La.1989); State v. Wilcoxon, 26,126 (La.App. 2d Cir. 06/22/94), 639 So.2d 385. Ordinary negligence does not equate to criminal negligence. Thus, the state is required to show more than a mere deviation from the standard of ordinary care. State v. Wilcoxon, supra.
Defendants Beason and Sullivan admitted to chasing Ronald Lee south on Highway 792, then, when Lee turned around, continuing to chase him north. When the defendants passed through town, their cars hit the bottom of a bump in the road and sparks flew from the bottom of their cars. The defendants admitted to travelling about 65-70 mph despite the 35 mph speed limit in town and the 55 mph speed limit outside of town. The testimony of other witnesses indicates it was probably higher. This is evidence of the defendants' gross deviation from the standard of care expected of a reasonably careful person.
Although the defendants deny seeing the accident, the evidence suggests otherwise. When the chase proceeded north, Howell and his companions followed close behind. Howell testified that he saw three sets of taillights about one hundred yards south of the "Parish Cut-Off Road" where the defendants claim they turned. Furthermore, Howell and his companions were the first to arrive at the scene of the accident. They did not pass the defendants on the road nor did they see anyone stop on the road. If the defendants had stopped on the road as they allege, Howell would have either overtaken them or seen *1280 them parked on the road. Furthermore, Ronald Lee's father testified that he arrived at the scene about twenty minutes after the accident. Ronald Lee told his father that Beason and the Sullivan brothers tried to kill him.
In addition, State Trooper W.R. Flowers, an accident reconstructionist, testified that there was a fresh skid mark on the road beginning about four hundred feet from the accident. Trooper Flowers determined that Ronald Lee's vehicle did not leave the skid mark because the path of the skid mark was inconsistent with the path of his vehicle. On the night of the accident, Trooper Flowers examined Sullivan's and Beason's automobiles. He determined that the tires on Sullivan's car were consistent with the tire that made the skid mark, although he could not say for certain that the skid mark came from Sullivan's car.
Trooper Flowers also examined Beason's white Thunderbird and found the molding on the right front bumper was loose (State Exhibits # 12, 13 and 14). It will be recalled that when the chase proceeded north of town, Beason was following directly behind Ronald Lee with the Sullivans in the third car position. Trooper Flowers testified that, in his opinion, the damage was fresh because the back of the loose molding was clean. If it had been old damage, the underneath of the molding would have been dirty. Defendant Beason testified that the molding was loose when he purchased the car. Billy James Bailiff testified that his half-sister sold the white Thunderbird to Charles Beason. Bailiff said that the right front bumper was damaged by his half-sister before she sold the car to Beason. Richard Sullivan's wife, Richard Sullivan and Kenneth Sullivan also testified that Beason's car was damaged prior to the accident.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). Obviously, the jury rejected the defendants' version of events. Instead, they chose to believe that the defendants did not stop the chase before the accident as they contend.
The jury obviously concluded that the conduct of the defendants, i.e., driving at high speeds through Castor and chasing Lee in a threatening manner, was a "gross deviation from the standard of care expected to be maintained" under the circumstances. Our review of the record supports this conclusion. The defendants possessed the requisite "negative" mental state of gross disregard for the consequences of their actions and for the interest of others. Compare State v. Martin, 539 So.2d 1235 (La.1989), which found the defendant's act of racing with another on a busy highway, weaving in and out of the right lane, and following the other car very closely constituted a gross deviation below the standard of care expected of him under the circumstances.
The defendants contend that, assuming that speeding through Castor or chasing Lee is criminal negligence, there was no evidence of any physical contact between the vehicles or any evidence of the position of the cars at the time of the accident and, therefore, there was no proof of any criminal negligence at the time of the accident. In essence, the defendants' argument is that they did not "cause" the accident and therefore they cannot be guilty of negligent homicide. A defendant's conduct need not be the sole proximate cause of the victim's death. It is sufficient for the defendant's acts to be a "contributing cause" or a "substantial factor" in the resulting death. State v. Martin, supra; State v. Matthews, 450 So.2d 644 (La. 1984), and cases cited therein.
In Martin, the Louisiana Supreme Court upheld Martin's conviction as a principal to *1281 negligent homicide even through it was his partner in the drag race who struck the victim's vehicle, and there was no evidence of Martin making any contact with the victim's vehicle. The court held that Martin's participation in a drag race was a "substantial factor" in the victim's death. Similarly, while it is clear that the immediate cause of Lori Jeter's death was Ronald Lee's inability to maintain control of his car while traveling at a high rate of speed, the reason Lee was traveling at a high rate of speed was the perceived threat of physical harm by the and close pursuit. The defendants' act of and close pursuit. The defendants' act of chasing Lee in a threatening manner was a "contributing factor" to the accident and to Lori Jeter's resulting death.
The trial court did not err in denying Kenneth Sullivan's and Charles Beason's motion for a post-verdict judgment of acquittal. This assignment of error lacks merit.

Assignment of Error Nos. 1 and 4: The trial court erred in failing to make a ruling after the Prieur hearing and by allowing evidence of "other crimes."
Prior to trial, the prosecutor gave the defendants notice of his intent to use evidence of other crimes. The prosecutor intended to introduce a statement made by Beason to State Trooper Ted Raley in which he stated that he and the Sullivan brothers went to the "Blue Hole" where they smoked some marijuana and laughed about how they had scared Lee.
In accordance with State v. Prieur, 277 So.2d 126 (La.1973), the trial court held a hearing and ruled that the portion of the statement concerning the smoking of marijuana would not be admitted. The defendants' counsel argued that the remaining portion of the statement should also be excluded as it was irrelevant. The trial court deferred ruling on this statement until it was offered.
The statement that the defendants had driven to the "Blue Hole" where they talked and laughed about scaring Lee was admitted without any objection from the defense counsel. An error cannot be availed of after a verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. Art. 841(A). This assignment of error is not properly before the court. Moreover, it appears clearly admissible.
Assignment of Error No. 2: The trial court erred in allowing State Trooper Flowers to testify as to hearsay.
On re-direct examination, the prosecutor questioned Trooper Flowers about the possibility of other vehicles making the skid mark that was found at the scene of the accident. The following exchange took place:
Mr. Fallin: Okay. And when you noticed the skid mark, did you question other witnesses, did they notice anybody there at the scene, coming up to the scene.
Mr. Culpepper: Objected to hearsay, Your Honor.
Mr. Fallin: Your Honor, I believe during his investigation he can determine certain aspects and that was one of the questions that Mr. Culpepper said that he did ask those people.
The Court: Overruled.
Witness: Yes sir, I asked them had they seen anybody or heard anybody slide.
Mr. Fallin: And what was their answer?
Witness: They stated no.
This line of questioning was in response to an issue raised by the defendant. Previously, in the defendants' cross-examination of Trooper Flowers, defense counsel implied that some other vehicle arriving between the time of the accident and the time Trooper Flowers arrived at the scene could have made the skid mark.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. Art. 801(C). The statements of the unnamed witnesses at the scene of the accident as related by Trooper *1282 Flowers are hearsay in that they were offered to prove that no other vehicles made the skid mark. The trial court erred in allowing the admission of this statement.
The appropriate standard of review to be applied in determining the effect of the improper admission of evidence is whether the court can declare a belief that the error was harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980), adopting Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court must be able to determine, beyond a reasonable doubt, that the improperly admitted hearsay did not contribute to the verdict. State v. Banks, 439 So.2d 407 (La.1983).
Four other witnesses testified that they were at the scene of the accident and neither heard nor saw any vehicle squealing its tires. Jason Howell and Billy Young were the first persons to arrive at the scene. Howell testified that he was at the scene for about thirty minutes while Young testified that he was at the scene for about one hour. Both stated that they heard no screeching of tires at the scene and that if a vehicle had screeched its tires, they most likely would have heard it. Thomas Howell testified that he arrived at the scene approximately ten minutes after the accident and stayed for approximately two hours. He also testified that he did not hear any squealing tires. Finally, Trooper Ted Raley testified that he arrived at the scene approximately one hour after the accident and stayed until everyone on the scene had left. Trooper Raley examined the roadway leading up to the accident scene and saw the skid mark. He further testified that he heard no squealing tires while at the scene of the accident.
Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless error. State v. Moseley, 587 So.2d 46 (La. App. 2d Cir.1991), writ denied, 589 So.2d 1066 (La.1991). The hearsay nature of the testimony given by Trooper Flowers was cured by the testimony of Jason Howell, Billy Young, Thomas Howell, and Trooper Raley, which corroborated the hearsay statement. These witnesses testified from personal knowledge and corroborated Trooper Flowers' statement that witnesses at the scene did not hear any screeching tires after the accident occurred. Therefore, the admission of the hearsay statement was harmless beyond a reasonable doubt.
This assignment of error is without merit.

Assignment of Error No. 3: The trial court erred in allowing the introduction of State Exhibit 15 in that the said exhibit was not material or relevant.
There seems to be some confusion as to what exactly Exhibit 15 was. Defense counsel in brief states that the exhibit was scrapings of rubber from the skid mark that was found on the road near the scene of the accident. The prosecutor asserts in his brief that Exhibit 15 was actually paint scrapings from defendant Beason's car. The court reporter's exhibit list and the exhibit itself describes the material as "paint scrapings off '77 [Thunderbird]."
Trooper Flowers examined defendant Beason's white Thunderbird the night of the accident. He noted that a piece of molding from the right front bumper was loose. Trooper Flowers attempted to scrape some samples of transferred paint off Beason's car but was unable to get enough material to send to the crime lab for analysis. During cross-examination, the defense counsel questioned Trooper Flowers why he did not submit the paint scrapings to the crime lab. On rebuttal, the prosecutor introduced Exhibit 15 to show the jury that there was not enough material to analyze the paint. This material was relevant to rehabilitate Trooper Flowers and to attempt to show that his decision not to send the paint scrapings to the crime lab was reasonable.
The trial court did not err in admitting this piece of evidence. This assignment of error is without merit.

Assignment of Error No. 5: The trial court erred in allowing into evidence a large color photograph of the victim.
*1283 The trial court allowed the admission of a color photograph of the victim over the objection of the defendants. The picture was of Lori Jeter's body after it was removed from the car (State Exhibit 18). There was a significant amount of blood on the body as the victim died from multiple traumatic injuries. The defendants were willing to stipulate to the fact that Lori Jeter was the victim and that the cause of death was the instant accident.
If allegedly gruesome photographs are to be admitted into evidence, their probative value should outweigh their prejudicial effect on the jury. A trial court's ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. State v. Unger, 362 So.2d 1095 (La.1978); State v. Bryant, 351 So.2d 1188 (La.1977). Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Valentine, 364 So.2d 595 (La.1978).
The photograph of Lori Jeter was not essential to the prosecutor's case. However, there was only one photograph of the victim admitted. The picture was not so gruesome as to have a significant prejudicial effect on reasonable jurors. See State v. Ruiz, 630 So.2d 897 (La.App. 4th Cir.1993). Furthermore, a defendant should not be permitted to deprive the prosecutor of the legitimate moral force of his evidence by agreeing to a colorless stipulation. State v. Gilmore, 332 So.2d 789 (La.1976). The admission of one photograph of Lori Jeter was not an abuse of the trial court's discretion and did not clearly prejudice the jury.
This assignment of error is without merit.

Assignment of Error No. 6: The trial court erred in allowing Trooper Raley testify as to statements made by Defendant Beason.
During the prosecution's direct examination of Trooper Ted Raley, the prosecution asked Trooper Raley to tell the jury what he heard defendant Beason tell Trooper Flowers about the night of the accident. The defendants objected to the question as not being included in the state's answer to the defendants' discovery motion and as being repetitive.
First, the state amended its discovery answer on September 14, 1993, a week before the trial, to make it clear that Trooper Raley and Deputy Hill were present when the defendants made oral statements to Trooper Flowers. Therefore, the defendants were put on notice that Trooper Raley possibly heard the statements made by defendant Beason to Trooper Flowers. In fact, Trooper Raley testified that he did not hear the statements defendant Beason made to Trooper Flowers. Trooper Raley did testify that Beason did make a separate statement directly to Trooper Raley; however, there was no objection made as to this testimony.
Second, since Trooper Raley did not repeat defendant Beason's statements that were made to Trooper Flowers, the objection as to repetitiveness is moot.
This assignment of error is without merit.

Assignment of Error No. 7: The trial court erred in allowing Jason Howell to testify as to the speeds of the vehicles.
During the prosecution's direct examination of Jason Howell, the following exchange took place:
Q. Okay, and were they traveling at a high rate of speed?
A. Yes, sir.
Q. Can you describe how fast they were going?
A. I believe they was going........
Mr. Culpepper: Objected to lack of foundation, Your Honor.
Although the trial court overruled the defense's objection, Howell did not testify as to the specific speed in miles per hour. Rather, he described what he heard and saw as the chase proceeded through the town of Castor.
A witness must have firsthand knowledge of the matters to which he testifies. LSA-C.E. *1284 Art. 602. A lay witness may testify as to opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. LSA-C.E. Art. 701. The testimony about what Howell saw and heard is not objectionable as it is based on his personal knowledge and is rationally based on his perceptions.
This assignment of error is without merit.

Assignments of Error Nos. 8, 9, & 10: The trial court erred in allowing Jason Howell to testify as to statements made by Ronald Lee and allowing Ronald Lee's father to testify as to statements made by Ronald Lee.
These assignments of error are based on two separate statements allegedly made after the accident by the driver of the vehicle, Ronald Lee. The first statement was heard by Jason Howell and the second statement was made to Ronald Lee's father, also named Ronald Lee. The defendants argued that the statements were hearsay and should be excluded. The prosecutor argued that the statements were "excited utterances" and therefore were exceptions to the hearsay rule. The trial court overruled each of the defendants' objections.
Jason Howell testified that when he arrived at the scene of the accident Ronald Lee was sitting in the car in an unconscious state. As he and Billy Young were putting out the fire, Ronald Lee was able to get out of the car on his own. Howell testified that Ronald Lee was walking around the accident scene holding his head and moaning. Lee was distressed and he had a deep cut on his head. Howell testified that Ronald Lee stated that he had "messed up." At this point the defendants objected, arguing that the statement was hearsay. After hearing arguments outside the presence of the jury, the trial court overruled this objection.
Howell then testified that Ronald Lee's father arrived at the scene of the accident approximately 25 to 30 minutes after the accident. The prosecutor asked Howell what he heard Ronald Lee say to his father. The defense counsel objected to the testimony as hearsay. Again the trial court heard arguments outside the presence of the jury and overruled the objection. Howell testified that he heard Ronald Lee tell his father that "they messed up and ... they ran into him and shook him like a dog with a rag."
Ronald Lee, the father, testified that when he arrived at the scene of the accident, his son was bloody and seemed scared and upset. Mr. Lee then asked his son what happened and Lee stated that Beason and the Sullivans tried to kill him. The defendants objected to these statements, arguing that they were hearsay and there was insufficient foundation to qualify as excited utterances. The trial court overruled the objection and allowed the statements into evidence.
An excited utterance is not excluded by the hearsay rule. It is defined as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." LSA-C.E. Art. 803(2). This exception requires an event sufficiently startling to render a declarant's normal reflective thought process inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the event and not the result of reflective thought. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir.1990), writ denied, 576 So.2d 25 (La. 1991).
In determining whether a statement was made under the stress of the startling event, the most important factor is time. Other factors include whether the statement is self-serving or in response to an inquiry, whether the statement is expanded beyond a description of events to include past or future facts, and whether the declarant performed tasks requiring reflective thought between the event and the statement. Reaves, supra.
Ronald Lee was involved in a high speed chase which resulted in an accident which did extensive damage to his car and *1285 killed his passenger. Ronald Lee was also injured in the accident. Due to the severity of the accident, it can be said to be a sufficiently startling event to render Lee's reflective thought process inoperative. The first statement made by Ronald Lee to Howell was within five minutes of the accident and was not made in response to any questions. Lee had just recovered consciousness and had pulled himself from a burning car. This statement clearly falls within the "excited utterance" hearsay exception.
The second statement was made in response to his father's inquiry as to what had happened and was made 20 to 30 minutes after the accident. Howell testified that between the time of the accident and the father's arrival, Ronald Lee seemed distressed and hurt. He suffered deep cuts to his head. He did not perform any tasks which required reflective thought during this time. Neither the ambulance nor the police had arrived before this statement was made.
Given the excitement of the accident and the relatively short amount of time after the accident, it appears that Ronald Lee was still under the stress of the accident when he made the statement to his father. See and compare Reaves, supra, in which this court allowed statements of a rape victim made to a neighbor 45 minutes to an hour after the rape.
The defendant also argues that the admission of these statements violates his right to be confronted with the witnesses against him. See U.S. Const. Amendment 6, and LSA-Const. Art. 1, § 16. Incriminating statements admissible under an exception to the hearsay rule are not admissible under the confrontation clause unless the statements bear adequate indicia of reliability. Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Reliability can be inferred, without more, in a case where the evidence falls within a firmly rooted hearsay exception. Id. The defense counsel concedes that the "excited utterance" exception is a firmly rooted exception to the hearsay rule. See also White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). As discussed above, these statements fit within the "excited utterance" exception to hearsay testimony and therefore do not violate the confrontation clause.
Because these statements qualify as excited utterances, the trial court did not err in allowing them into evidence. These assignments of error are without merit.

Assignments of Error Nos. 11, 12 & 13: The trial court erred in allowing Trooper Hollis to testify in rebuttal and in allowing the specific testimony given by Trooper Hollis.
These assignments of error are based on the rebuttal testimony of Trooper Tim Hollis. The defense objected to this testimony as being improper rebuttal evidence.
Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984). The determination of whether evidence is rebuttal evidence and, hence, admissible is an issue which is addressed to the sound discretion of the trial judge. State v. Kelly, supra; State v. Green, 390 So.2d 1253 (La.1980).
In the defense's case-in-chief, several witnesses testified as to smelling alcohol on Ronald Lee immediately after the accident. In addition, Ruby Havard testified that she was in the ambulance which transported Ronald Lee to the hospital after the accident. She testified that Ronald Lee vomited several times on the way to the hospital.
On rebuttal, the prosecutor called Trooper Tim Hollis to testify. Trooper Hollis arrived at the hospital where Ronald Lee had been taken about three hours after the accident occurred. Trooper Hollis testified that he did not smell alcohol on Ronald Lee. The defense objected to the testimony as improper rebuttal and the trial court overruled this *1286 objection. Trooper Hollis also testified, over the defense's objection, that he did not notice the distinctive smell of someone who has recently vomited.
Trooper Hollis's testimony was offered to rebut the defense witnesses' testimony that Ronald Lee smelled of alcohol and that he had vomited on the way to the hospital. The defense argued that this was improper rebuttal because Trooper Hollis did not see Ronald Lee until approximately three hours after the accident and one hour after Ronald Lee arrived at the hospital. The fact that Trooper Hollis's observations of Ronald Lee were at a different time than the defense witnesses' observations does not make it improper rebuttal evidence. The delay of Trooper Hollis's observations goes to the weight and credibility of his testimony. The jury was able to take this factor into account when they considered the conflicting testimony.
The trial court did not err in allowing Trooper Hollis to testify in rebuttal. These assignments of error are without merit.

Assignment of Error No. 14: The trial court erred in failing to give the defendants' requested jury instructions.
The defense counsel properly requested the following special jury instructions.
1) Ordinary negligence does not constitute proof of criminal negligence. State v. Rock, 571 So.2d 908 (La.App. 5th Cir. 1990).
2) A driver who strikes and fatally injures a pedestrian is not criminally negligent and thus cannot be found guilty of negligent homicide, although that person admits to a third person that he left the roadway and struck a pedestrian and that he and his passenger had been drinking. State v. Garret [Garrett], 525 So.2d 1235 (La.App. 1st Cir.1988).
3) To meet its burden of proof, the state in a homicide case, must prove the criminal agency of someone as the cause in fact and in law of the victim's death beyond a reasonable doubt. State v. Phillips, 514 So.2d 743 (La.App. 2d Cir.1987).
4) Pulling out in the path of a vehicle, meeting an oncoming vehicle and pulling back into the vehicle you are passing and causing the death of the passenger of said vehicle is ordinary negligence, not criminal negligence and the defendant in such a case would not be guilty of negligent homicide. State v. Jones, 298 So.2d 774 (La.1974).
5) Driving across the centerline does not constitute criminal negligence and if a death results, the defendant is not guilty of negligent homicide. State v. Crawford, 471 So.2d 778 (La.App. 2d Cir. 1985).
6) Driving at an unproven rate of speed, thought to be in excess of the speed limit, is not criminal negligence and any death resulting because of same is not negligent homicide. See State v. Le-Moine, 403 So.2d 1230 (La.1981).
7) The fact that a defendant is intoxicated does not mean that the defendant is guilty of criminal negligence and if a death results, it does not mean that the defendant is guilty of negligent homicide. See State v. Green, 418 So.2d 609 (La.1982).
8) Reckless operation of vehicle does not necessarily constitute criminal negligence. See State v. Garret [Garrett], 525 So.2d 1235 (La.App. 1st Cir.1988); State v. Jones, 298 So.2d 774 (La.1974); State v. Crawford, 471 So.2d 778 (La. App. 2d Cir.1985); State v. LeMoine, 403 So.2d 1230 (La.1981); State v. Green, 418 So.2d 609 (La.1982).
9) If you find that a defendant had criminal intent, either specific or general, you must find that defendant not guilty. State v. Adams, 210 La. 782, 28 So.2d 269 (1946).
The trial court accepted and gave requested jury instruction number one. The trial court modified requested jury instruction number nine to read "criminal negligence exists when although neither specific or general criminal intent is present." The remaining *1287 requested jury instructions were rejected. Defense counsel objected to the trial court's actions but gave no specific reason for his objection.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. LSA-C.Cr.P. Art. 807.
Requested jury instructions numbers two, four, five, and seven were properly denied by the trial court because they were unsupported by any evidence at trial and therefore were not pertinent. See State v. Belgard, 410 So.2d 720, 726 (La.1982). These instructions would only mislead or confuse the jury.
Requested jury instruction number three was included in the trial court's general charge concerning the definition of negligent homicide and the explanation of reasonable doubt. Therefore, the trial court did not err in refusing to give this instruction.
The case cited in jury instruction number six did not involve negligent homicide and therefore this instruction was a misstatement of the holding of the case. As this jury instruction was not wholly correct and would have required further explanation, the trial court did not err in denying this charge.
The requested special instruction number eight was not a correct statement of the law. In fact, "reckless operation of a vehicle" is legally defined as the operation of a motor vehicle in a criminally negligent manner. LSA-R.S. 14:99. The cases cited by the defendants do not support this charge. Because the requested charge was not wholly correct, the trial court did not err in denying this charge.
Instead of using jury instruction number nine, the trial court read the statute defining criminal negligence to the jury. Because this requested charge was included in the general charge, the trial court did not err in refusing to give this charge.
This assignment of error is without merit.

Assignment of Error Nos. 17 and 18: The trial court erred in failing to grant the defendants' motion to reconsider sentence and the sentences given were unconstitutionally excessive.
The defense counsel only argued this assignment of error as it applies to defendant Charles Beason. He did not argue that defendant Kenneth Sullivan's suspended sentence was excessive. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La. 1990).
A pre-sentence investigation report was ordered for defendant Charles Beason. He was found to fall within grid cell 4-D of the Felony Sentencing Guidelines. Prior convictions of simple burglary and aggravated assault were considered in determining the proper grid cell in accordance with La.S.G. Sec. 205. Grid cell 4-D recommends a sentence of 42 to 30 months. The maximum sentence for negligent homicide is five years. LSA-R.S. 14:32. Beason was sentenced to serve three years at hard labor. Beason filed a motion to reconsider sentence, alleging that the sentence was unconstitutionally excessive because the trial court considered his prior convictions in determining the proper grid cell without first adjudicating him a habitual offender. The trial court denied this motion after hearing oral arguments on February 22, 1994.
The defendant argues that the trial court's consideration of his prior convictions is improper without the trial court first adjudicating him a habitual offender. The sentencing guidelines determine the proper grid cell by considering the crime seriousness level of the offense and the criminal history index of the offender. La.S.G. Sec. 201. *1288 The criminal history index is determined by assessing points to certain prior convictions. La.S.G. Sec. 205. The trial court acted in accordance with the sentencing guidelines in considering the defendant's prior convictions to impose the appropriate sentence. A defendant need not be adjudicated a habitual offender in order to consider his prior convictions in determining the proper grid cell.
Defendant also argues that the guidelines are designed for the "typical" case in which aggravating or mitigating circumstances are not present. However, the defendant does not suggest what a "typical" negligent homicide is nor does he put forth any mitigating factors in the instant case.
When a trial judge sentences within the designated sentence range on the sentencing grid, he need only put on the record the sentence, the proper grid cell for the sentence imposed, and how he determined that the cell was the proper cell to be used. La.S.G. See. 201(B) and (C); State v. Barnes, 607 So.2d 872 (La.App. 2d Cir.1992). The trial judge noted the proper grid cell as determined by the pre-sentencing report and sentenced the defendant within the range suggested by the guidelines. Such a sentence is appropriate for an offender with that criminal history, and is not excessive under the Louisiana Constitution. La.S.G. Sec. 201(C); State v. Essex, 618 So.2d 574 (La. App. 2d Cir.1993).
Moreover, the sentence imposed by the trial court is not constitutionally excessive. The sentence imposed is less than the maximum allowed under the statute. The defendant's act of chasing the victim at a high speed and in a threatening manner displayed a total disregard for the safety of others and resulted in the death of one person. Furthermore, the defendant had prior convictions of simple burglary and aggravated assault. A sentence of three years at hard labor for this defendant does not shock the sense of justice and is not grossly out of proportion to the severity of the crime. See and compare State v. Jackson, 452 So.2d 1250 (La.App. 2d Cir.1984), writ denied, 457 So.2d 17 (La.1984), in which this court held that a three-year sentence for negligent homicide involving an automobile accident was not constitutionally excessive given the defendant's prior history of numerous traffic offenses.
These assignments of error are without merit.

Assignment of Error No. 15: The trial court erred in failing to grant the defendant's motion for a new trial.
The defendants' motion for a new trial was based on the errors assigned on this appeal. All the assignments of error have no merit; therefore, the trial court did not err in denying the defendants' motion for a new trial.

CONCLUSION
The defendants' convictions and sentences are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, HIGHTOWER, WILLIAMS and STEWART, JJ., and GUIDRY, J. Pro Tem.
Rehearing denied.