697 So.2d 706 (1997)
STATE of Louisiana, Appellee,
v.
D.L., Appellant.
No. 29789-JAK.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1997.
*707 Charles H. Ryan, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Edward Dion Young, Assistant District Attorney, for Appellee.
Before HIGHTOWER, STEWART and GASKINS, JJ.
GASKINS, Judge.
Following a vehicular accident in which six persons were injured, the appellant, D.L., was adjudicated delinquent and convicted of six counts of negligent injuring. He was sentenced to serve six months on each of the six counts to run consecutively. However, the execution of the sentence was suspended, and he was placed on supervised probation for two years, subject to conditions which included mental health counseling, prohibition from obtaining a driver's license for one year, court approval prior to obtaining a driver's license, completion of a court-approved safe driving course, and performance of 20 hours of community service. In addition, he was fined $500 and costs. D.L. appealed. For the reasons assigned below, we affirm his juvenile adjudication and disposition.

FACTS
At approximately 1:40 p.m. on December 19, 1995, a clear, dry day, D.L. was driving three other students back to school after skipping classes. After speeding around a curve, D.L. lost control of the white Toyota Camry on a straight stretch of road. The Camry left yaw marks before striking a vehicle parked at the gasoline pumps of a convenience store. The collision knocked two gas pumps from the concrete foundation, and a serious fire resulted. Mr. J.T. Toston, an elderly man who was pumping gas into his car, was severely burned and subsequently died of his injuries. Also injured were two passengers in the Toston car and the three passengers in the Camry.

TESTIMONY
Louisiana State Trooper Roger Jaubert worked the accident which occurred on La. Hwy. 593 approximately one mile south of Bastrop where the posted speed limit is 45 mph. On arrival he found a chaotic scene at which ambulances and a fire truck were already present and the injured were lying on the edge of the parking lot of the store.
*708 Trooper Jaubert measured the yaw marks which he differentiated from skid marks, a controlled slide in a straight line. Yaw marks are offset and are made by an uncontrolled slide. D.L. informed the trooper that he was the driver of the Camry which struck the second car involved. Trooper Jaubert issued D.L. tickets for careless operation and no driver's license. The prosecution filed into evidence two exhibits showing the positions of the vehicles before and after the accident and showing the yaw marks of D.L.'s Camry.
Driving south from Bastrop to Collinston, Melanie Moore, a nurse, witnessed the accident from her car which she stopped on the side of the road. She observed a white Toyota going "real fast" in the opposite direction and crossing the center line. Realizing that the car was out of control, she pulled off the side of the highway and observed the car cross into her lane and jerk back over into the other lane. Its wheels appeared to lock, and the car slid into the parking lot. When she saw the fire ball from the gas pumps, she sent her child to call 911 at a nearby house while she ran to render aid. She observed two young black males and two young black females. She assisted one of the young men in pulling a girl with massive facial injuries away from the car. Then she rendered aid to Mr. Toston who was burned and seriously injured. The paramedic who treated Mr. Toston at the scene also described his injuries as severe.
Sally Wallace, a passenger in another vehicle traveling south, also witnessed the accident. The driver of the vehicle in which she was traveling had to leave the road just south of the store to avoid being struck by the Camry, which was coming into their lane. Ms. Wallace turned in her seat, saw the car sliding into the parking lot and then observed the smoke and fire. They immediately returned to the store where she saw one car on fire facing the store and the other car facing the highway. The gas pumps were also on fire.
A passenger in D.L.'s vehicle, Chad Thaxton, testified that D.L. was driving the four-door white Camry. The other passengers were Markisa Calvin and Evelyn Johnson. Thaxton sustained a cut on the back of his head and glass in his eye for which he was treated. Ms. Johnson, who was seated behind D.L., stated that she was thrown from the car. Her nose was broken, and she required facial surgery. She also received scars from glass on her chest, fingers, face, head, eye and neck. She testified that prior to the accident the car was speeding; although she didn't know the speed limit in that area, she felt the car was traveling fast. She was not sure if the car was out of control and remembered swerving and a white car passing them. Ms. Calvin stated she had scars on her right wrist and cheek, but her injuries had not required stitches or follow-up medical treatment.
Beatrice Battle and her granddaughter were in Mr. Toston's car while he pumped gas. She saw nothing prior to the accident. She was treated at the emergency room for a cracked elbow, and her hair was burned in the accident. The granddaughter had a cut in her foot requiring stitches and cuts in her back and side.
The prosecution rested its case, and the defense moved for a directed verdict which was denied.
For the defense, Chad Thaxton testified that he and his companions left Bastrop High School in D.L.'s car and went to D.L.'s home. Stating none had been drinking or taking drugs prior to the accident, Thaxton described D.L.'s behavior as normal. He maintained there was no horse playing or anyone trying to interfere with the driver in the vehicle. Thaxton opined that D.L. was "going a little faster than he should have" and that he was "going fast."
Ms. Johnson also denied that drugs or alcohol was used by anyone. In her opinion, D.L. was acting in a normal manner, but driving "a little faster than he should have." No one interfered with the driver or tried to grab the wheel. Ms. Calvin's testimony was substantially the same. Although she did not know the speed limit, she stated the car was "going fast."
The defendant's mother testified that, prior to the accident, he had never been in any trouble involving driving or been accused of *709 breaking the law. She reported her son to be an honor student.
D.L. testified he was driving the car and returning one of his friends to the school. Driving that day without his mother's knowledge or permission, he had driven only once or twice before the accident. After a curve, he lost control of the car. He recalled the car going out of control, sliding into the grocery store, the resulting fire and helping the others out. He sustained only a few scratches on his face. He stated he was a good student and an athlete.

LAW
La. R.S. 14:39 states:
Negligent injuring is the inflicting of any injury upon the person of another by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent injuring shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
La. R.S. 14:12 states:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.

JUVENILE COURT'S RULING
Although the petition and affidavit charged D.L. with "wilful" criminal negligence, the court noted that neither specific nor general intent is present in the offense which does not require intent at all. The juvenile court found that the evidence showed that D.L. was exceeding the posted speed limit. Further, in addition to violating the speeding law, D.L. failed to maintain control of his vehicle and crossed into the opposing lane of traffic. While the juvenile court did not base D.L.'s conviction on his driving without a license, the court did consider D.L.'s negligible driving experience. Although there was no evidence of substance abuse or interference with the driver, the court found that the inexperienced driver should have used more prudent care under the circumstances. D.L.'s conduct demonstrated such a disregard for the interests of other persons that his conduct amounted to a gross deviation below the standard of care expected to be maintained by a reasonable person under like circumstances.

ERROR PATENT
The defendant contends that the state's failure to establish his age during its case in chief is error patent. Since jurisdiction of the juvenile court was not established, D.L. argues his adjudication as a delinquent and his convictions should be set aside. La. Ch. C. art. 804(1) defines a "child" as any person under the age of twenty-one, including an emancipated minor, who commits a delinquent act before attaining seventeen years of age. La. Ch. C. art. 804(4) states that a "delinquent child" is one who has committed a delinquent act.
In State in the Interest of Metoyer, 606 So.2d 74 (La.App. 3d Cir.1992), the juvenile argued that patent error existed because there was no proof of his age and the court's jurisdiction. Although the court concluded that the issue was not a proper consideration under an errors patent review because its resolution required an inspection of the evidence, it chose to address the matter anyway. The Metoyer record contained the juvenile's age in the petition for adjudication along with two earlier petitions for adjudication involving that child with whom the juvenile court was very familiar. Even though the juvenile made an oral motion for acquittal at trial which the appellate court treated as a motion to dismiss, the appellate court found the juvenile court did not err in the denial of the motion. In the instant case, no error patent occurred where the juvenile's age was included in the delinquency petition but not presented at the hearing.
Additionally, the juvenile did not move to dismiss the proceedings on the basis of lack of jurisdiction due to his age, nor did he present any evidence that contradicted the state's allegation of his age. See also La. Ch. *710 C. art. 875 and State in the Interest of Lewis, 386 So.2d 1079 (La.App. 3d Cir.1980).
This argument is without merit. The record adequately contains the defendant's age which was set out in the petition and affidavit initiating this action.[1]

INTENT
The petition and affidavit charges D.L. with six counts of "wilfully and unlawfully" inflicting, by criminal negligence, injury on another person. Because La. R.S. 14:39 does not include intent or wilfulness in the definition of negligent injuring, D.L. contends that the petition filed against him is so defective that it cannot form the basis of a valid judgment. This argument was the basis of D.L.'s unsuccessful motion in arrest of judgment. On appeal, D.L. raises the issue in two assignments of error.
The state maintains that La. Ch. C. art. 844 sets out the form of the petition and provides that failure to comply with the formal requirements of this article is not grounds for dismissal of the petition unless substantial prejudice results. La. Ch. C. art. 845 sets out the required petition contents which must include facts showing the child is delinquent and the statute the child is accused of having violated. The petition seeking a delinquency adjudication of D.L. cited La. R.S. 14:39.
The purpose of the delinquency petition is to give the juvenile notice and an opportunity to defend. State v. Hillman, 353 So.2d 1356 (La.App. 3d Cir.1977).
At the conclusion of the trial, the juvenile court specifically referred to the error in the petition which referred to wilful negligent injuring. The court noted that no intent was required under the law. The petition gave D.L. notice of the offense with which he was charged. No prejudice resulted from the erroneous inclusion of the word "wilfully" in the petition. While the petition contained an error, it was harmless surplusage. See La. Ch. C. art. 113.
These assignments of error are meritless.

SUFFICIENCY OF EVIDENCE
In four assignments of error, D.L. essentially challenges the sufficiency of the evidence against him. Specifically, he contends that the juvenile court erred in denying his motion for a "directed verdict," in improperly considering a police report which had not been offered into evidence, in convicting him after the state failed to prove criminal negligence, and in improperly presuming guilt based on violation of the statute on careless operation of a vehicle. D.L. argues that the evidence presented during the State's case was inadequate and the "directed verdict" should have been granted. Because these alleged errors are closely related, we consider them together.
As to the motion for "directed verdict" or, more properly in a criminal case, motion for judgment of acquittal, La.C.Cr.P. art. 778 states:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.
D.L.'s contention that this court should consider only evidence presented in the state's case in reviewing the ruling on his motion is without merit. When the defendant's motion for a judgment of acquittal is overruled at the close of the state's case, on review the appellate court may consider, in determining whether there is evidence of guilt, not only evidence before the court at the time of the motion but the entire admissible evidence contained in the record of the trial. State v. Williams, 521 So.2d 629 (La. App. 1st Cir.1988). Since a review of all evidence in the record is proper, this makes it unnecessary to discuss D.L.'s complaint *711 about the police report, which was formally admitted into evidence after the denial of the motion. Furthermore, based upon our review of the evidence, as discussed infra, we find no error in the trial court's denial of the motion for judgment of acquittal.
In a juvenile delinquency proceeding, the state must prove beyond a reasonable doubt that the child committed every element of the offense alleged in the petition. La.Ch.C. Art. 883. The standard for the state's burden of proof is no less strenuous than the standard of proof required in a criminal proceeding against an adult. State in Interest of R.E.B., 26468 (La.App.2d Cir. 9/21/94), 643 So.2d 287; State in the Interest of J.W., 597 So.2d 1056 (La.App. 2d Cir. 1992).
On appeal, the standard of review for the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), i.e., whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt, is applicable to juvenile delinquency cases. State in Interest of R.E.B., supra; State in the Interest of J.W., supra.
Further, in a juvenile delinquency proceeding, an appellate court is constitutionally mandated to review the law and facts. La. Const. Art. 5 Sec. 10(B). Accordingly, under the civil standard of appellate review, Rosell v. ESCO, 549 So.2d 840 (La.1989), an appellate court must review the record to determine whether the trial court was clearly wrong or manifestly erroneous in its factual findings. State in Interest of R.E.B., supra; State in the Interest of J.W., supra.
As previously noted, negligent injuring is the inflicting of an injury upon the person of another by criminal negligence. La.R.S. 14:39. Criminal negligence exists when, although neither specific nor general intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation of the standard of care expected to be maintained by a reasonably careful man under like circumstances. La.R.S. 14:12. Unlike general or specific criminal intent, criminal negligence is essentially negative. Rather than requiring that the accused intend some consequence of his actions, criminal negligence is found from the accused's gross disregard for the consequences of his actions. State v. Martin, 539 So.2d 1235 (La.1989); State v. Wilcoxon, 26126 (La.App.2d Cir. 6/22/94), 639 So.2d 385, writ denied, 94-1961 (La.12/16/94), 648 So.2d 386; State v. Beason, 26725 (La. App.2d Cir. 4/7/95), 653 So.2d 1274, writ denied, 95-1388 (La.10/27/95), 661 So.2d 1359. Ordinary negligence does not equate to criminal negligence. Thus, the state is required to show more than a mere deviation from the standard of ordinary care. State v. Wilcoxon, supra; State v. Beason, supra.
The juvenile court's conclusion that D.L. was speeding and lost control of the vehicle is fully supported by the record. All three passengers in the Camry acknowledged that D.L. was driving "fast." Ms. Moore stated D.L. was traveling "real fast" when he went by in the opposite direction. She observed the car swerve into the oncoming lane, jerk back and slide into the parking lot. Trooper Jaubert explained that the yaw marks observed at the scene were made by a vehicle out of control. The fact that D.L. did not have a driver's license and, more importantly, had "only driven once or twice" in his life before he drove fast and lost control of the vehicle, demonstrates such disregard of the interest of his passengers and others in harm's way that D.L.'s conduct amounts to a gross deviation of the standard of care expected to be maintained by a reasonably careful person under like circumstances. Therefore, we find that the juvenile court was not manifestly erroneous in finding that the state proved, beyond a reasonable doubt, that D.L. committed acts which constituted negligent injuring.
These assignments of error are meritless.

MOTION FOR NEW TRIAL
In his remaining assignment of error, D.L. originally contended that the trial court erred in denying his motion for new trial. However, in brief he specifically declined to *712 pursue this issue, arguing that, if his claims were well founded, the appropriate remedy would be a judgment of acquittal, not a new trial. Therefore, as we find his complaints meritless, no further consideration of this assignment of error is warranted.

CONCLUSION
The delinquency adjudication and disposition of D.L. are affirmed.
AFFIRMED.
NOTES
[1] According to the petition for adjudication, D.L.'s date of birth was 3/10/80, making him 15 years old at the time of the accident.