539 So.2d 1235 (1989)
STATE of Louisiana
v.
Jimmy Rogers MARTIN.
No. 88-K-1266.
Supreme Court of Louisiana.
March 13, 1989.
*1236 R.O. Lewis, Luling, for applicant.
William J. Guste, Jr., Atty. Gen., Harry J. Morel, Jr., Dist. Atty., Gregory Champagne, Asst. Dist. Atty., Kurt Sins, Assistant Dist. Atty., for respondent.
COLE, Justice.[*]
Jimmy Rogers Martin (Martin) was charged as a principal with two counts of negligent homicide under La.R.S. 14:32 for two deaths resulting from a "drag race" in which he participated. After a jury trial, Martin was found guilty and sentenced. The Court of Appeal affirmed his conviction but remanded the case for re-sentencing.[1] We granted certiorari[2] to review the propriety of Martin's conviction as a principal to the crime of negligent homicide and now affirm the decision of the Court of Appeal.

A. FACTS
The collision giving rise to the charges occurred December 31, 1986 at approximately 6:00 P.M. on Highway 90 near Avondale, Louisiana. Though Martin testified he was neither speeding nor racing, two witnesses testified they saw Martin's *1237 car traveling at high speed (80 to 100 m.p.h.) and engaged in an apparent race with a Chevrolet Nova driven by Vincent Jenkins.[3] In particular, Marcel Null, a Houma police lieutenant, testified Martin passed him traveling at least 90 m.p.h., and on the basis of his police training and experience he concluded they were racing. A third witness also observed the race but she could not positively identify the two vehicles. The cars driven by Martin and Jenkins were following one another very closely and manuevering in and out of the right hand lane.
After both cars had sped by the witnesses, Jenkins' car struck the rear of a Chevrolet Blazer occupied by Bryan Boudreaux and Eva Trevasos. From the force of the impact, the Blazer flipped over, hit a guard rail, and crashed into a canal. Boudreaux and Trevasos both died at the scene. According to the testimony of State Trooper Willumitis who testified for the state as an accident reconstruction expert, Martin's car then struck the rear of Jenkins' Nova approximately 100 feet beyond the point where the Blazer left the road. The state concedes Martin's car never actually hit the Blazer.[4] Jenkins was convicted of two counts of negligent homicide in a separate proceeding.

B. ASSIGNMENTS OF ERROR
In his application for writs to this Court, Martin raised three basic issues:
1. His conviction is erroneous because one cannot be convicted as a principal to the crime of negligent homicide;
2. The trial court erred in failing to provide funds for the defense to retain an accident reconstruction expert; and
3. The trial court erred in failing to grant a mistrial on the basis of allegedly improper and prejudicial statements made by the prosecution in closing argument.

C. ANALYSIS
1. Liability as a Principal.
The crux of Martin's argument on this issue is that one cannot be a principal to the crime of negligent homicide because it is legally impossible to intend to be negligent. In support of this contention, he analogizes to our decision in State v. Adams, 210 La. 782, 28 So.2d 269 (1946). In Adams we held it was legally and logically impossible to convict someone of the offense of "attempted negligent homicide" because the act of attempt requires a specific intent to commit the crime. Since one cannot specifically intend to be negligent, one cannot be found guilty of attempted negligent homicide. 28 So.2d at 270. Martin contends the same reasoning extends to liability as a principal in a negligence crime such as negligent homicide; i.e., since there can be no specific intent, there can be no liability.
There are several flaws in Martin's analogy. First, it ignores the substantial differences between liability for criminal attempt and liability as a principal; second, it ignores the statutory definition of "principal"; third, it ignores the elements of criminal negligence; and finally, it ignores Martin's conduct and the notion of proximate cause.
The fundamental, if unspoken, premise of Martin's argument is that specific intent is a necessary element of a principal's liability. The statutory definition of "principal" contains no such requirement. Principals are defined as: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission...." La.R.S. 14:24 (emphasis *1238 added).[5] The statute imposes no independent intent requirement. To find the accused liable as a principal, it is sufficient that he possessed the requisite mental state for the substantive criminal act.
Here, the underlying substantive criminal act is negligent homicide, "the killing of a human being by criminal negligence." La.R.S. 14:32. Thus, "criminal negligence" is the requisite mental state the prosecution must prove to sustain a conviction as a principal.[6] For Martin to be convicted as a principal, the state had to meet a two-prong test. It had to prove beyond a reasonable doubt that Martin was: 1) criminally negligent and thereby had the requisite mental state; and 2) "concerned" in the commission of a negligent homicide. We find the state has met both prongs of this test.
The first prong is readily met here. Criminal negligence is defined in La.R.S. 14:12:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
Unlike general or specific criminal intent, criminal negligence is essentially negative. Rather than requiring the accused intend some consequence of his actions, criminal negligence is found from the accused's gross disregard for the consequences of his actions. In this case, the jury found Martin's conduct, i.e., driving at high speed on a busy highway, weaving in and out of the right lane, and following Jenkins' car very closely, was a "gross deviation below the standard of care" expected of him under the circumstances. On our review of the entire record, we find this conclusion is supported by ample evidence. See State v. Mussall, 523 So.2d 1305 (La.1988). Martin possessed the requisite mental state, "although neither specific nor general criminal intent" was present. Negligent homicide is one of those crimes requiring no intent and no intent, therefore, is required for one to be a principal to the crime. This is obvious from reading La.R.S. 14:8; 14:10; 14:11; 14:24; and 14:32 in pari materia.
The second prong of the test is somewhat more problematic, but we find no error in the jury's conclusion that Martin was suffuciently "concerned" in the acts leading to the deaths of Boudreaux and Trevasos. The prosecution introduced substantial evidence of Martin's participation in a race with Jenkins. The race resulted in the deaths of two innocent third parties. From these facts it was proper for the jury to conclude the "concern" requirement was met even though Martin's vehicle did not directly strike the fatal blow.
Martin's argument he is not guilty because he did not "cause" the deaths is without basis in law. While we have never considered the precise factual situation presented here, we have upheld homicide convictions where the acts of a defendant were not the sole cause of death. In the older case of State v. Kaufman, 211 La. 517, 30 So.2d 337 (1947), we upheld the defendant's conviction for negligent homicide despite the defendant's claim he lost control of his car because of a defective railroad crossing. We noted that while the condition of the crossing was a "contributing or concurrent cause of the accident," this negligence on the part of other parties "would not excuse the defendant if he himself were guilty of criminal negligence...." 30 So.2d at 346.
*1239 Our later decisions have made it clear that the defendant's conduct need not be the sole proximate cause of the victim's death. Rather, the proper test is whether: "Was the defendant's conduct a substantial factor in bringing about the forbidden result?" State v. Matthews, 450 So.2d 644, 646 (La.1984) (citations omitted).[7] In Matthews, proof that the defendant's conduct was a "proximate cause" of death was sufficient to satisfy the causality requirement for second-degree murder. There is clearly no reason to heighten the causality requirement for negligent homicide, an offense requiring a lower level of criminal conduct and requisite mental state. We conclude Martin's participation in the race with Jenkins was a substantial factor in bringing about the two deaths. The causal nexus was established by the joint nature of Martin's and Jenkins' undertaking and therefore the "concern" prong is also met.
A review of the jurisprudence from other jurisdictions overwhelmingly supports our conclusion that Martin's conduct meets the requirements for principal liability. The leading case is Regina v. Swindall, 2 Car. & K. 230, 2 Cox C.C. 141, 175 Eng.Rep. 95 (1846). In Swindall, both participants in a road race were found guilty as principals for the death of a third party resulting from the race even though only one of the vehicles actually struck the victim.[8] The English court found that "when two persons are driving together, encouraging each other to drive at a dangerous pace, then, whether the injury is done by the one driving the first or the second carriage, I am of the opinion that in point of law the other shares the guilt." 175 Eng.Rep. at 97. This theory of joint criminal liability arising out of joint participation in a race has been adopted by most American courts that have confronted this question.[9]
In this case, the state's evidence established that Martin and Jenkins were jointly engaged in a series of criminally negligent acts which led directly to the collision. This provides a sufficient basis for the jury's conclusion that the two deaths were the proximate result of the actions of both defendants. See People v. Kemp, 310 P.2d at 683. We find this conclusion is also in keeping with the "substantial factor" test articulated by this Court in Matthews, supra. Since the state has met its burden of proof with respect to both prongs of the "principal liability test" set out above, we find the Court of Appeal did not err in rejecting Martin's contention that he cannot be a principal to the crime of negligent homicide.
2. Failure to Provide Funds for Expert.
Martin argues the trial court's denial of his request for funds to employ an accident reconstruction expert constitutes reversible error. We disagree. The trial court held an evidentiary hearing to determine whether Martin was indigent. Though the trial court agreed to appoint *1240 counsel, it found the defendant was employed and making $9.00 per hour, owned his own home free and clear, and possessed other property as well. These factors are all properly considered by the court in making a determination of indigency. State v. Adams, 369 So.2d 1327, 1329 (La.1979). We find on the record made, the trial court did not abuse its considerable discretion in concluding Martin was not indigent for purposes of appointing an expert. In light of this finding, we need not consider Martin's claim of his need for expert testimony and conclude this assignment is without merit.
3. Improper Closing Argument.
Martin objects to two comments made by the prosecution during closing argument that referred to "smoke screen" tactics used by defendant's counsel. He also objects to a reference by the prosecution to Japanese, Germans and "commi-pinkos." (sic). He further alleges the prosecutor made improper remarks about his belief in the credibility of a witness. Finally, Martin contends the trial court erred in failing to give a requested special jury charge to dispel the prosecution's alleged misstatement of the law during arguments.
We agree with the Court of Appeal that the references to "smoke screens," while undesirable, plainly do not rise to the level of prejudice necessary to constitute reversible error. The prosecution's references to Japanese, Germans and "commi-pinkos," though in very poor taste, were not an effort to inject race or national origin into the proceedings contrary to C.Cr.P. art. 770(1). Rather, it appears from their context they were part of an inarticulate attempt to further the "smoke screen" image discussed above in some sort of battle example. The remarks were not aimed at the defendant or his attorney and we find the trial court did not abuse its discretion in refusing a mistrial.
Martin's claim the prosecution made improper comments on the credibility of a witness is without merit. While he relies on State v. Hamilton, 356 So.2d 1360 (La. 1978) and State v. Kaufman, 304 So.2d 300 (La.1974), these two cases stand only for the proposition it is improper for the prosecutor to comment on his personal belief in the defendant's guilt. Comment on the credibility of witnesses is proper and within the scope of closing argument. See C.Cr.P. art. 774; State v. Sayles, 395 So.2d 695 (La.1981). Finally, we find no error in the trial court's refusal to give the special jury instruction requested by the defendant. The prosecution's misstatement of the law was cured by the trial court's proper charge to the jury. See State v. Holmes, 388 So.2d 722 (La.1980). Since the special instruction was virtually the same as the instruction actually given, the trial court did not err in refusing it. C.Cr.P. art. 807. Furthermore, since Martin agreed to the modified charge given by the trial court, he cannot now assign it as error. C.Cr.P. art. 801.

D. CONCLUSION
We are of the opinion Martin's conviction must be affirmed. The state produced sufficient evidence for the jury to conclude beyond a reasonable doubt that Martin had the requisite mental state to meet the test for liability as a principal to negligent homicide. Essentially, his driving conduct exhibited such disregard for the interest of others as to amount to a gross deviation below the standard of care expected of a reasonably careful man. Definitionally, this is criminal negligence. Also, his participation in the race supplies the necessary causal nexus for the "concern" requirement under La.R.S. 14:24 and supports the conclusion his conduct was a proximate cause of the two deaths. Finding all assignments of error to be without merit, we affirm the judgment of the Court of Appeal in all respects.
AFFIRMED.
NOTES
[*] Judge Schott of the Louisiana Court of Appeal, Fourth Circuit, participated in the decision of this case as Justice Ad Hoc in place of Lemmon, J., recused.
[1] 525 So.2d 535 (1988).
[2] 532 So.2d 163 (La.1988).
[3] Martin was not charged with "drag racing" under La.R.S. 32:65 which requires evidence of a point-to-point race "over a common selected course." R.S. 32:65(B). The state's evidence does, however, support a finding that Martin and Jenkins were engaged in a dangerous speed competition of some sort.
[4] Indeed, Willumitis admitted on cross-examination that Martin's vehicle did not directly cause the victims' vehicle to leave the road.
[5] Louisiana's statute abolishes the common law distinctions among principals in the first degree, principals in the second degree, and accessories before the fact. Jenkins would have been characterized as a principal in the first degree while Martin would have been a principal in the second degree. Under R.S. 14:24, both principals and accessories before the fact share the same degree of criminal culpability, that of a principal in the first degree.
[6] See La.R.S. 14:11 entitled "Criminal intent; how expressed." It provides: "The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences."
[7] In Matthews we affirmed a second-degree murder conviction where the beating inflicted by the defendant was not the sole cause of death. There, the immediate cause of death was drowning but the actions of the defendant in leaving his beaten victim near the water were held to be a "contributing cause" of death warranting criminal liability for homicide. 450 So. 2d at 646-647.
[8] The court indicated the driver who actually ran over the man was guilty as a principal in the first degree and the other as a principal in the second degree. 175 Eng.Rep. at 96. As noted above in footnote 5, this distinction is not recognized in Louisiana. Under R.S. 14:24, both would simply be liable as principals.
[9] See e.g., State v. Melcher, 15 Ariz.App. 157, 487 P.2d 3 (1971); People v. Kemp, 150 Cal.App.2d 654, 310 P.2d 680 (1957); State v. Alterio, 154 Conn. 23, 220 A.2d 451 (1966); Jacobs v. State, 184 So.2d 711 (Fla.Dist.Ct. of App.1966); State v. McFadden, 320 N.W.2d 608 (Iowa 1982); Jones v. Commonwealth, 247 S.W.2d 517 (Ky. 1952); Campbell v. State, 285 So.2d 891 (Miss. 1973); State v. Fennewald, 339 S.W.2d 769 (Mo. 1960); and State v. Butler, 11 Ohio St.2d 23, 227 N.E.2d 627 (1967).

The only noticeable trend in exceptions to the general rule of liability occurs in cases where the victim was also a participant in the race. See, e.g., Thacker v. State, 103 Ga.App. 36, 117 S.E.2d 913 (1961); State v. Uhler, 61 Ohio Misc. 37, 402 N.E.2d 556 (1979); State v. Petersen, 270 Or. 166, 526 P.2d 1008 (1974); Commonwealth v. Root, 403 Pa. 571, 170 A.2d 310 (1961). In these cases, criminal liability was held inappropriate for the death of a willing participant in the criminally negligent conduct. Thus, to some extent, the exception proves the rule.