|! LOVE, Judge.

STATEMENT OF CASE

On August 10, 1998, defendant, Juan Pena, was charged by bill of information with possession of cocaine in violation of La. R.S. 40:967. The defendant entered a plea of not guilty at his arraignment on August 13, 1998. A suppression and preliminary hearing was held on September 4, 1998. The trial court found probable cause and denied defendant’s motion to suppress evidence. After a jury trial on October 22, 1998, the defendant was found guilty as charged. On February 19, 1999, the defendant was sentenced to serve two and one half years at hard labor.

STATEMENT OF FACTS

On July 17, 1998, New Orleans Police Officers Ryan Maher and Chris Campiat were patrolling the French Quarter when they observed the defendant sleeping on the sidewalk at the intersection of St. Ann and Bourbon Streets. When the officers woke the defendant, they noticed that he smelled of alcohol. When the defendant stood up, he swayed from side to side. At that time, the officers decided to arrest the defendant for public intoxication. In a search incident to the arrest, the officers found three bags of marijuana and one bag of cocaine in the defendant’s rear pants pocket.
IsThe parties stipulated that the substances found on the defendant tested positive for marijuana and cocaine.
The defendant testified that he was in a lounge in the French Quarter when the officers approached him and asked him for his identification. When the officers saw that his name was Juan Pena, they asked if he was related to Richard Pena. The defendant told the officers he was visiting New Orleans and did not have any family in New Orleans. According to the defendant, the officers insisted that he was Richard Pena’s brother and involved in drugs. The defendant denied any possession of cocaine or any involvement in narcotics. The defendant acknowledged a pri- or conviction for possession of cocaine.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the defendant contends that the trial court *475 erred when it denied his Batson challenge. The defendant entered a Batson challenge after the State and the defendant had exercised their peremptory challenges on the first panel of prospective jurors. The trial court found that the defendant had not made a prima facie case of discriminatory intent on the part of the prosecutor.
The defendant contends that the State improperly used its peremptory challenges to exclude African-Americans from the jury in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Equal protection prohibits the peremptory challenge of a prospective juror based on race. Batson, 476 U.S. at 86, 106 S.Ct. at 1717. It is the equal protection rights of the prospective juror, as well as the defendant, 13which are protected by Batson and its progeny. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 118 L.Ed.2d 411 (1991).
In Batson, the United States Supreme Court adopted a three-part analysis to determine whether a prosecutor exercised peremptory challenges in a discriminatory fashion. First, the defendant must demonstrate a prima facie case of purposeful discrimination. Batson, 476 U.S. at 96, 106 S.Ct. at 1723. Second, once the defendant establishes a prima facie case of discrimination, the burden shifts to the prosecution to give race-neutral reasons for the peremptory challenges. Id., 476 U.S. at 97, 106 S.Ct. at 1723. Third, after the prosecutor has presented his reasons, the trial court must assess the weight and credibility of the explanation to determine whether the defendant has met his burden of proving purposeful discrimination. Id., 476 U.S. at 98, 106 S.Ct. at 1724 n. 1.
The first step in the Batson analysis places the burden of proof on the defendant to show that the prosecutor exercised peremptory challenges to remove members of a particular race from the jury venire. State v. Collier, 553 So.2d 815, 818 (La.1989). For a Batson challenge to succeed, it is not enough that the defendant show a racially discriminatory result; rather, that result must be traced to a racially discriminatory purpose. State v. Green, 94-0887, p. 23 (La.5/22/95), 655 So.2d 272, 287 (quoting Batson, 476 U.S. at 94, 106 S.Ct. at 1721 (quoting Washington v. Davis, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976))). The sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory challenges. State v. Green, supra, at p. 23, 655 So.2d at 287.
If the defendant fails to make out a prima facie case of racial discrimination, the Batson challenge fails; and, the State does not have to provide race-neutral reasons for the exercise of its peremptory challenges. \Jd. at p. 24, 655 So.2d at 287-88. To prove his case, the defendant may offer any relevant facts such as the prosecutor’s pattern of strikes against members of a suspect class, statements or actions of the prosecutor that support an inference of racial discrimination, the composition of the venire and of the jury finally impaneled, and any other disparate impact upon the suspect class that is alleged to be the victim of purposeful discrimination. Id.
At the beginning of trial, the defendant asserted a Batson challenge arguing that the State used its peremptory challenges to exclude African-Americans from the jury. While the defendant argued that the State used all of its peremptory challenges to dismiss African-Americans from the jury, he did not produce any specific evidence in support of his allegation. He did not produce any evidence concerning *476 the racial composition of the jury venire. In fact, the record reveals that the State used only three of its six peremptory strikes to excuse African-Americans from the jury venire. The defendant, however, used all six of his peremptory challenges to remove African-American jurors who had been accepted by the State. The trial court found that the defendant failed to make a prima facie case of discrimination and denied defendant’s objection.
There is nothing in the record to support the defendant’s argument. The trial court did not err when it denied the defendant’s Batson challenge.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2

The defendant further argues that the trial court erred when it failed to sustain his objection to improper and prejudicial remarks made by the State during closing argument. The defendant complains of the following remarks made by the prosecutor during closing argument:
|fiWhat’s he doing in New Orleans? He doesn’t even speak English. He’s traveling all over the United States. He’s got a conviction in Detroit for the same thing. Y’all can consider all of that. Y’all can say, “What do you think he does for a living?”
* * ifc * sjs
It’s very simple. Why did we bring up his prior convictions? To put it all in front of you. It’s for the same charge. You say, “Well, we don’t know if we believe the police officer.” We have a convicted felon. He’s been convicted of the same thing. Why did I bring up these cities? These are major drug distribution cities. That’s why I brought this up. Let’s not hide behind it. Detroit. New York. New Orleans. Let’s not sugar coat this. What do I think he’s running around the country doing? I think you can figure that out. I think that’s very clear.
Article 774 of the Louisiana Code of Criminal Procedure provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
In State v. Langley, 95-1489, p. 7 (La.4/14/98), 711 So.2d 651, 659, the Supreme Court stated:
In any event, prosecutors are allowed broad latitude in choosing closing argument tactics. See, e.g. State v. Martin, 539 So.2d 1235, 1240 (La.1989). Although under La.C.Cr.P. art. 774 closing argument must be “confined to the record evidence and the inferences which can reasonably be drawn therefrom,” both sides may still draw their own conclusions from the evidence and convey such view to .the jury. State v. Moore, 432 So.2d 209, 221 (La.1983), cert. denied 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). “Before allegedly prejudicial argument requires reversal, the court must be thoroughly convinced that the jury was influenced by the remarks and that such contributed to the verdict.” State v. Taylor, 93-2201, p. 21 (La.2/28/96), 669 So.2d 364, 375; State v. Jarman, 445 So.2d 1184, 1188 (La.1984). We also ask whether the remarks injected “passion, prejudice or any arbitrary factor” into the jury’s recommendation. Moore, 432 So.2d at 220.
*477 IbA review of the trial testimony reveals that the prosecutor was only reiterating facts from the defendant’s own testimony and drawing inferences therefrom. The defendant admitted that he did not speak much English and needed an interpreter for trial. On cross-examination, the defendant testified that he was employed by a battery company in the United States, that his job involved some traveling, and that he had been to Detroit, New York City, and New Orleans. The defendant even acknowledged a prior conviction for possession of cocaine in Detroit, Michigan. Thus, the prosecutor’s remarks were within the scope of article 774 of the Code of Criminal Procedure. The trial court did not err when it denied defendant’s objections.
This assignment is without merit.

DECREE

Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
MURRAY, J., concurs with reasons.