CARAWAY, J.,
concurring.
hi concur in the ruling which affirms the defendants’ convictions for cruelty to a juvenile and reverses the negligent homicide convictions. I also agree that there were negligent acts pertaining to the child by others at Hope Youth Ranch. However, the issue of criminal negligence can only be measured from this record regarding the actions of these three defendants.
Both of the crimes with which these defendants were charged involved the “criminal negligence” which harmed Alex and caused his death. Under La. R.S. 14:12, “criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” The *252 crime of cruelty to a juvenile results in the unjustifiable pain and suffering of the child, while negligent homicide addresses the child’s death. If criminal negligence as so defined is completely devoid of any requisite mental intent, then the convictions of both crimes in this case — criminal negligence to a child that causes pain and criminal negligence that causes death— should be affirmed. On the other hand, if there is a state of mind or mens rea element involved, a distinction regarding the nature of the criminal negligence in this case may exist, allowing for conviction for one crime but not the other.
In State v. Martin, 539 So.2d 1235 (La.1989), the Louisiana Supreme Court addressed the issue of the mens rea, or what it repeatedly referenced as the “requisite mental state,” for criminal negligence under our law. The |2case involved a negligent homicide conviction of a defendant who was drag racing against another automobile on a public highway. The vehicle driven by the other driver actually crashed into the victim’s vehicle causing the death, and the defendant was charged as a principal to the crime. Citing the definition of criminal negligence under La. R.S. 14:12, the court held that the state’s burden was to prove beyond a reasonable doubt that the defendant was “criminally negligent and thereby had the requisite mental state.” Id. at 1238. The court then upheld the conviction finding that the defendant “possessed the requisite mental state.” Id.
In another negligent homicide case, this court cited the Martin ruling and expressed the mens rea element for criminal negligence as follows:
The defendants possessed the requisite “negative” mental state of gross disregard for the consequences of their actions and for the interest of others.
State v. Beason, 26,725 (La.App.2d Cir.4/7/95), 653 So.2d 1274, 1280.
Another important jurisprudential consideration of the criminal negligence standard was provided by Judge Hall (later Justice Hall) in his opinion on this court, State v. Crawford, 471 So.2d 778 (La.App. 2d Cir.1985). Noting that the reporter’s comment to La. R.S. 14:12 references the gross negligence concept of the Restatement of Torts, the court states:
Criminal liability is always predicated not upon mere negligence or carelessness but upon that degree of negligence or carelessness which is denominated “gross” and which constitutes so great a departure from that of a reasonable man that a reasonable man would have realized the risk. Thus, the actor’s conduct reflects a reckless disregard for the safety of another.
Restatement Second of the Law of Torts § 500 provides:
|sThe actor’s conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor’s conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.
Id. at 780-781.
Further understanding of the mens rea element of criminal negligence is obtained by comparison to our definition of general criminal intent. “General criminal intent is present ... when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.” La. R.S. 14:10(2). In contrast, while not adverting *253 to the consequences, the criminally negligent actor has a mental state which disregards the interests of others. While the potentially harmful consequences on others may not circumstantially be apparent “as reasonably certain to result from his act,” the criminally negligent actor understands that his action can involve the interests of others and he recklessly disregards those interests.
The most recent negligent homicide ruling of our Supreme Court involved a deer hunting accident in which one hunter shot and killed his friend and fellow hunter. State v. Desoto, 07-1804 (La.3/17/09), 6 So.3d 141. The hunter was convicted by a jury, and his conviction was affirmed. The shooting occurred twenty minutes after sunset, and from the defendant’s statements, he admitted knowing that his friend had left a nearby deer stand close to the time of the shooting and had been moving JJnto the same field as the deer which defendant purportedly saw. Under these circumstances, the defendant’s awareness of the higher probability of the victim’s presence in the area was of significant importance for the determination of criminal negligence, and the court could distinguish another similar hunting accident case where a gross disregard for human safety was not shown.
With the present two charges, I believe that our concept of criminal negligence does allow for a distinction regarding the “disregard” of the risk of harm to Alex, which these defendants’ actions and inac-tions exhibited. The circumstances indicate that the defendants should have realized the unjustified pain and suffering which Alex suffered from the heat and actions of the other children. Since we have held that the crime of cruelty to a juvenile is a general intent crime, the defendants’ inaction could even amount to intentional neglect. The circumstances surrounding their inaction indicate that they must have adverted to Alex’s pain and suffering as reasonably certain to have been occurring. But if not, there is no reasonable doubt that they witnessed and could understand his distress so that their disregard of his condition amounted to a gross deviation below the standard of care expected of them.
Nevertheless, did they realize the risk of death and understand that Alex’s distress and pain involved a high degree of probability of death? The reasonable doubt concerning that question for me stems from all the other factors harmful to Alex occurring before the 2:00 p.m. shift of which these defendants were presumably unaware. While the defendants | .^disregarded the interest of Alex, I do not believe there was sufficient evidence demonstrating their awareness of the risk of death and allowing for a finding of their reckless disregard for his life.
Moreover, I also believe that the prosecution of defendants for both crimes amounts to double jeopardy. The crimes involve the same acts and inactions of the defendants with proscribed consequences upon the same victim.