STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 KA 1356

STATE OF LOUISIANA

VERSUS

JOEY PAUL CLEMENT

JUDGMENT RENDERED: _____ DEC 1 0 2024 _____

* * * * * * *

Appealed from the Seventeenth Judicial District Court
Parish of Lafourche • State of Louisiana
Docket Number 609148 • Division E

The Honorable F. Hugh Larose, Presiding Judge

* * * * * * *

Jane Hogan
*Louisiana Appellate Project*
Hammond, Louisiana

COUNSEL FOR APPELLANT
DEFENDANT—Joey Paul Clement

Kristine Russell
*District Attorney*
Joseph S. Soignet
Jason Chatagnier
Shaun George
*Assistant District Attorneys*
Thibodaux, Louisiana

COUNSEL FOR APPELLEE
State of Louisiana

* * * * * * *

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

**WELCH, J.**

The defendant, Joey Paul Clement, was charged by amended grand jury indictment with three counts of vehicular homicide (counts one, two, and three), violations of La. R.S. 14:32.1(A), and one count of operating a motor vehicle while intoxicated, fourth offense (count four), a violation of La. R.S. 14:98.4(A)(1). The defendant pled not guilty to counts one, two, and three, and he pled guilty to count four. Following a jury trial, the defendant was found guilty of the responsive verdict of negligent homicide on count one, a violation of La. R.S. 14:32(A)(1), and guilty of vehicular homicide on counts two and three.[1] The trial court sentenced the defendant to five years at hard labor on count one, thirty years at hard labor on each of counts two and three, and twenty years at hard labor on count four, all to be served consecutively.[2] The defendant now appeals, designating three assignments of error. For the following reasons, we affirm the convictions and the sentence on count one. We vacate the sentences and remand for resentencing on counts two, three, and four.

## FACTS

Shortly after midnight on November 20, 2021, Lily Dufrene was driving her SUV southbound on Louisiana Highway 20 in the Chackbay area with Michaila Bowling and Hali Coss as passengers. At the same time, the defendant was driving his truck northbound on Highway 20. The two vehicles collided, veered off the road, and caught fire, killing Dufrene, Bowling, and Coss. The defendant's blood sample revealed he was intoxicated at the time of the accident.

## SUFFICIENCY OF THE EVIDENCE

In the defendant's first assignment of error, he argues the evidence was insufficient to support his convictions for vehicular homicide, as the State failed to

---

[1] On counts two and three, the jury also found the defendant's blood alcohol concentration was 0.15 or more, pursuant to La. R.S. 14:32.1(B).

[2] We note the sentences on counts two, three, and four are illegally lenient. These errors will be discussed below in the patent error section.

2

prove his alcohol consumption was a contributing factor to the accident. In his second assignment of error, he argues the evidence was insufficient to support his conviction for negligent homicide, as the State failed to prove his alcohol consumption and speeding were substantial factors in the accident.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Legaux**, 2019-0075 (La. App. 1st Cir. 9/27/19) 288 So.3d 791, 794; see also La. C.Cr.P. art. 821(B).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt the defendant was guilty of every essential element of the crime. **Legaux**, 288 So.3d at 794. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **Legaux**, 288 So.3d at 796.

For the deaths of Bowling and Coss, the defendant was convicted of vehicular homicide, which at the applicable time period, was defined, in pertinent part, by La. R.S. 14:32.1[3] as:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . . whether or not the offender had the intent to cause death or great bodily harm, *whenever any of the following conditions exist and such condition was a contributing factor to the killing*:
>
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
>
> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
>
> (3) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
>
> (4) The operator is under the influence of alcoholic beverages.
>
> (5)(a) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.

(Emphasis added).

To sustain a conviction for vehicular homicide, the State must prove the following elements: (1) the killing of a human being; (2) caused proximately or caused directly by an offender engaged in the operation of any motor vehicle; (3) a prohibited degree of intoxication; and (4) a link between the intoxication and the killing. Most importantly, the link between the intoxication and the killing does not have to be a "proximate cause," but simply a "contributing factor." **State v. Leger**, 2017-2084 (La. 6/26/19) 284 So.3d 609, 615-16. A "proximate cause" is one that directly produces an event and without which the event would not have occurred. By contrast, a "contributing cause" is a factor that – though not the primary cause –

---

[3] We note that La. R.S. 14:32.1 was amended by 2024 La. Acts, No. 662, §1, eff. Aug. 1, 2024.

4

plays a part in producing a result. A "factor" is an agent or cause that contributes to a particular result. **Leger**, 284 So.3d at 616 (internal citations omitted).

In the instant case, the defendant challenges the sufficiency of the evidence offered in support of the link between his intoxication and the deaths of Bowling and Coss. Thus, the question is whether the State offered sufficient evidence to establish that the defendant's intoxication was a "contributing factor" to the killings. See La. R.S. 14:32.1(A); **Leger**, 284 So.3d at 617; **State v. Melancon**, 2021-1489 (La. App. 1st Cir. 9/16/22) 2022 WL 4286614, *4 (unpublished), writ denied, 2022-01544 (La. 1/25/23) 354 So.3d 9.

For the death of Dufrene, the defendant was convicted of the responsive verdict of negligent homicide, which is pertinently defined as the killing of a human being by criminal negligence. See La. R.S. 14:32(A)(1). Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances. La. R.S. 14:12. A defendant's conduct need not be the sole proximate cause of the victim's death. Rather, it is sufficient for the defendant's acts to be a "contributing cause" or a "substantial factor" in the resulting death. See **State v. Martin**, 539 So.2d 1235, 1238-1239 (La. 1989).

At trial, Steven Kraemer, a firefighter with the Chackbay Fire Department, testified that shortly after midnight on November 20, 2021, he and his team were dispatched to a two-vehicle accident on Louisiana Highway 20, about a quarter mile from the bar M2. According to Kraemer, the highway did not have shoulders and was dark because many streetlights were out after Hurricane Ida. As Kraemer approached the scene, he observed two vehicles completely engulfed in flames. The front of the truck, which was still partially on the road, was resting against the front of the other vehicle, which was in the ditch. When Kraemer approached the back of

5

the truck, a man, later identified as the defendant, emerged and stated, "I f***ed up. Go get them." Kraemer testified that after the fire was extinguished, they removed the victims' bodies from the vehicle.

Louisiana State Trooper Leeman Howard testified that when he responded to the scene, he observed an overturned vehicle on fire off the northbound lane and another vehicle on fire still partially in the northbound lane. Trooper Howard then spoke to the defendant, who stated that he was driving about fifty miles per hour prior to the crash. Trooper Howard testified that he suspected the defendant was intoxicated, as he had bloodshot, glossy eyes and slurred speech. After speaking with the defendant, Trooper Howard assessed the scene and noted there were gouge marks in the northbound lane, as well as a tire mark left by the truck on the center line. Regarding the condition of the highway, Trooper Howard testified the accident occurred in a sweeping curve, streetlights in the area were unlit due to Hurricane Ida, and the road did not have shoulders. Based on the damage to the vehicles and their points of rest after impact, Trooper Howard suspected it was a high-speed crash.

Louisiana State Trooper Ashton McCrae corroborated Trooper Howard's observations of the accident and the defendant's intoxication at the scene. Trooper McCrae testified the defendant exhibited bloodshot eyes and slurred speech, smelled of alcohol, appeared frantic and emotional, and repeatedly stated, "[T]hey were in my lane. [They were] in my lane." At that time, Trooper McCrae advised the defendant of his rights and transported him to the hospital, where his blood was drawn by a nurse.[4] Later that same day, Trooper McCrae interviewed the defendant, who stated that he left work and briefly went home before going to the bar M2. The defendant noted that prior to the accident, he ingested his prescription medications

---

[4] The defendant was advised of his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Adderall and Zoloft. He also drank approximately four beers and a couple shots of liquor.

Dr. John King performed the autopsies on Dufrene, Bowling, and Coss and testified the victims suffered massive trauma and died on impact as a result of the high-speed accident. According to Dr. King, the victims' injuries were caused by a tremendous amount of energy and were comparable to injuries obtained in accidents involving eighteen-wheelers. Dr. King also reviewed the toxicology analysis performed on each victim and stated there was no evidence of alcohol in the victims' blood.

A toxicology analysis of the defendant's blood revealed evidence of amphetamine (Adderall) and Sertraline (Zoloft). Additionally, his blood alcohol concentration (BAC) level was 0.16 at the time his blood was drawn at 3:28 a.m., approximately three hours after the accident.

Dr. William George, an expert in pharmacology and toxicology, testified regarding the effects of the alcohol and drugs in the defendant's blood at the time of the crash. Dr. George explained amphetamine is a central nervous system stimulant, while Sertraline is an antidepressant. Dr. George noted that when these two drugs are combined, a person may become agitated, anxious, nervous, and possibly confused.

Dr. George testified that for a person with a BAC of 0.16 (the defendant's BAC three hours after the accident), reaction time increases by around fifty percent, and the risk of getting into a fatal car accident is twenty-five to thirty-two times greater than a sober person. Based on a retrograde calculation, Dr. George determined the defendant's BAC at the time of the accident was 0.22. Dr. George noted a person with a BAC of 0.22 has increased confidence, significantly impaired reaction time and motor coordination, disinhibited thinking processes, reduced visual acuity, and drowsiness. He further noted a person with a BAC of 0.22 has a

forty to fifty times greater risk of getting into a fatal car accident. Based on the poor lighting conditions of the highway, the high rate of speed, and the defendant's 0.22 BAC, Dr. George opined the defendant experienced significant impairment in his central nervous system and vision at the time of the crash. On cross-examination, however, he conceded the defendant's impairment had no effect on Dufrene's vehicle entering his lane.

Adam Hyde, an expert in accident crash reconstruction, prepared a traffic crash reconstruction report based on his inspection of the vehicles and review of the traffic crash reports, toxicology reports, autopsy reports, photographs, and body camera and patrol car video footage. Hyde determined that at the time of impact, Dufrene's speed was between forty-nine and fifty-two miles per hour, while the defendant's speed was between eighty-five and ninety-three miles per hour. The posted speed limit on Highway 20 was fifty-five miles per hour.

Hyde testified that the initial contact between the vehicles occurred when Dufrene swerved to the left, leaving behind a yaw mark, and hit the defendant's truck in the northbound lane, which was the defendant's lane of travel.[5] Hyde noted that Dufrene's SUV had a change in speed of over seventy miles per hour, which took a tremendous amount of force and energy and greatly increased the risk of severe or fatal injuries.[6] Based upon his review of the toxicology reports, Hyde testified that the defendant's intoxication and excessive speed were factors in the crash.

Hyde further testified the accident occurred entirely in the northbound lane, and he could not determine what caused Dufrene to swerve over the center line into the defendant's lane and enter into the yaw. Hyde testified there was no evidence the defendant crossed the center line into the southbound lane at the time of impact,

---

[5] Hyde explained a yaw mark is created when the tires spin and the vehicle rotates as it moves to a new position.

[6] Hyde explained a gouge mark requires a significant amount of force and is created when the vehicles hit each other, dig into the ground, and rip away part of the road itself.

and he confirmed there would not have been an accident if Dufrene had continued forward in the southbound lane.

The factfinder can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the factfinder must make credibility determinations and weigh the evidence. The **Jackson** standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. **State v. Dupre**, 2022-1228 (La. App. 1st Cir. 4/14/23) 367 So.3d 81, 88.

## *Vehicular Homicide*

After a thorough review of the record, we find the evidence presented in this case, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of vehicular homicide for the deaths of Bowling and Coss. The defendant on appeal focuses on the fact that his intoxication did not contribute to or cause the *accident*. However, the plain language of the vehicular homicide statute requires the State to prove the defendant's intoxication was a contributing factor to the *killings*. See La. R.S. 14:32.1(A). The State clearly met this burden of proof.

At trial, the State presented evidence that at the time of the accident, the defendant had a BAC of 0.22, almost three times the legal limit, and was driving around ninety miles per hour in a fifty-five mile per hour area. According to Dr. George and Dr. King, the defendant's intoxication, combined with his excessive speed, were factors in the victims' deaths. Dr. George and Dr. King both testified the defendant's speed directly contributed to more severe damage to the vehicles, as well as more severe injuries and instant deaths of the victims.

The State also presented evidence that the portion of Highway 20 where the accident occurred had a sweeping curve, had no shoulders, and was unlit due to damaged streetlights. Notably, Dufrene had slowed down to around fifty miles per

9

hour at the time of impact, demonstrating the difficulty of negotiating the curve in the dark. The defendant, on the other hand, maintained his high rate of speed. In fact, Troopers Howard and McCrae testified the defendant seemed unaware of how fast he was driving, stating he was only driving around fifty miles per hour at the time of the crash.

Finally, Dr. George testified regarding the substantial impairment the defendant experienced as a result of his 0.22 BAC, including increased confidence, significantly impaired reaction time and motor coordination, disinhibited thinking processes, and reduced visual acuity, all of which increased the likelihood of a fatal car accident. According to Dr. George, the defendant would have struggled to drive safely, felt more comfortable taking risks such as speeding, and would have been less likely to inhibit himself from doing something he should not do, e.g., driving while intoxicated. Moreover, the defendant's ingestion of Adderall and Zoloft may have caused him to feel agitated, anxious, nervous, and/or confused in addition to his inebriated condition. Based on the numerous substances impacting the defendant's state of mind and physical functioning, the jury could have rationally concluded the defendant's intoxication impaired his judgment and caused him to excessively speed on a dark, dangerous highway, contributing to the victims' immediate deaths on impact. See **Leger**, 284 So.3d at 617-18; **Melancon**, 2022 WL 4286614 at *5.

### *Negligent Homicide*

We further find the jury was also reasonable in finding the defendant guilty of the responsive verdict of negligent homicide for the death of Dufrene. The defendant made similar arguments on appeal regarding the charge of negligent homicide to those he made with respect to the charges of vehicular homicide, in particular, that the State failed to prove his intoxication was a substantial factor in

causing the accident. However, the State was required to prove his intoxication was a substantial factor in causing Dufrene's death. See **Martin**, 539 So.2d at 1239.

Herein, the State's evidence established the defendant engaged in a series of criminally negligent acts that led directly to Dufrene's death. While already under the influence of Adderall and Zoloft, the defendant consumed a significant amount of alcohol before driving between thirty and forty miles per hour over the speed limit on a dark highway with no shoulders. Dr. King noted the accident was akin to an eighteen-wheeler accident, based in large part on the speed at which the defendant was traveling. Although the accident likely would have happened regardless, the accident would not necessarily have been fatal but for the defendant's high rate of speed. According to Hyde, the high rate of speed led to a significant change in energy, which greatly increased the risk of fatalities. Thus, the jury rationally concluded the defendant's high rate of speed was connected to his high level of intoxication, and that such intoxication was a substantial factor in Dufrene's death. See La. R.S. 14:32; **Martin**, 539 So.2d at 1239; **State v. Wheat**, 471 So.2d 1027, 1029 (La. App. 1st Cir. 1985).

In reviewing the evidence in the light most favorable to the prosecution, we find a rational factfinder could have found the State proved beyond a reasonable doubt all of the elements of vehicular homicide and negligent homicide. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v. Calloway**, 2007-2306 (La. 1/21/09) 1 So.3d 417, 418 (*per curiam*).

These assignments of error are without merit.

## EXCESSIVE SENTENCE

In his third assignment of error, the defendant argues the trial court imposed an unconstitutionally excessive sentence. He further argues he received ineffective

assistance of counsel at sentencing based on counsel's failure to present any mitigating evidence. Due to patent sentencing errors on counts two, three, and four, we pretermit discussion of this assignment of error on those counts. However, we discuss the merits as to count one.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. A sentence within statutory limits may still be considered excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court has great discretion in imposing a sentence within statutory limits, and an appellate court should not set aside a sentence in the absence of an abuse of discretion. **State v. Kimble**, 2023-0176 (La. App. 1st Cir. 9/21/23) 376 So.3d 869, 874-75.

Louisiana Code of Criminal Procedure art. 894.1 sets forth factors the trial court must consider before imposing a sentence. The trial court need not recite the entire checklist of La. C.Cr.P. art. 894.1, but the record must reflect it adequately considered the criteria. In light of the criteria expressed by La. C.Cr.P. art. 894.1, an appellate court's review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. Remand for full compliance with La. C.Cr.P. art. 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. **Kimble**, 376 So.3d at 874.

In the present case, the jury found the defendant guilty of the responsive verdict of negligent homicide for the death of Lily Dufrene. At the sentencing hearing, the trial court heard victim impact statements from the victims' friends and family members, detailing their grief, their sense of loss, and the toll the deaths had

12

on everyone who knew and loved them. Before imposing the sentence, the trial court stated it considered the suffering imposed upon the victims' families, noting "it was done for nothing."

The trial court also considered the defendant's criminal history, including numerous prior arrests and convictions for DWI. The trial court presided over the defendant's most recent DWI case in 2017 and specifically sentenced the defendant to two years in prison, hoping that would hold the defendant accountable for his actions and deter him from committing another DWI. The trial court found there was nothing in the defendant's history that suggested he was capable of change or rehabilitation, stating that if the defendant was released, he would likely kill another person by drunk driving.

Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both. La. R.S. 14:32(C)(1). The trial court sentenced the defendant to five years at hard labor for Dufrene's death. On appeal, the defendant contends the trial court abused its discretion by failing to articulate reasons for imposing near-maximum consecutive sentences and failing to consider the sentencing guidelines of La. C.Cr.P. art. 894.1. However, the defendant failed to urge these specific grounds for excessiveness in his motion to reconsider sentence. Rather, he only argued the sentence was unconstitutionally excessive. As the trial court denied the motion without a hearing, the defendant made no argument to the trial court regarding these specific grounds. Accordingly, the defendant is precluded from raising such grounds for the first time on appeal. **State v. Trosclair**, 2022-0798 (La. App. 1st Cir. 3/13/23) 2023 WL 2468528, *3 (unpublished), writ denied, 2023-00534 (La. 10/17/23) 371 So.3d 1072; see La. C.Cr.P. art. 881.1(B) and (E). However, we will review the defendant's sentence under a bare excessiveness claim. **Trosclair**, 2023 WL 2468528 at *3.

Considering the senseless nature of the victims' deaths in this case, we find no abuse of discretion in the trial court's imposition of a five-year sentence for the defendant's negligent homicide conviction. The trial court considered the defendant's criminal history and lack of accountability, as well as the severity and impact of the crime when imposing the defendant's sentence. The defendant had multiple prior DWI convictions, with his most recent conviction resulting in a two-year sentence of imprisonment. Despite receiving several chances at rehabilitation, however, the defendant continued to engage in the reckless behavior of driving while intoxicated, disregarding the rule of the law, and placing the safety of others at risk. The defendant's actions that night resulted in the deaths of three young women, who had their whole lives ahead of them, leaving behind a hole in the hearts of many friends and family members. Moreover, the record shows no expression of remorse or accountability by the defendant, as evidenced by his blaming Dufrene for causing the accident, before the trial court and on appeal. Any lesser sentence would depreciate the seriousness of the defendant's crime, which ended a life. The sentence imposed is not grossly disproportionate to the severity of the offense or shocking to the conscience and, thus, is not unconstitutionally excessive. See **Melancon**, 2022 WL 4286614 at *8.

## INEFFECTIVE ASSISTANCE OF COUNSEL

An ineffective assistance of counsel claim is more properly raised by an application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted.[7] However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel, and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial

---

[7] The defendant would have to satisfy the requirements of La. C.Cr.P. art. 924, *et seq.*, in order to receive such a hearing. **Anderson**, 2023-2071 (La. App. 1st Cir. 11/3/23) 2023 WL 7270839, *4 n.6 (unpublished).

economy. **State v. Anderson**, 2023-0271 (La. App. 1ˢᵗ Cir. 11/3/23) 2023 WL 7270839, *4 (unpublished), <u>writ denied</u>, 2023-01591 (La. 5/21/24) 385 So.3d 241.

Every criminal defendant is entitled to the effective assistance of counsel. U.S. Const. amend. VI; La. Const. art. I, § 13. Under the standard for ineffective assistance of counsel set out in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must first show the attorney's performance was deficient, which requires a showing that counsel made errors so serious he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove the deficient performance prejudiced the defense. **State v. Anderson**, 2022-0587 (La. App. 1ˢᵗ Cir. 12/22/22) 357 So.3d 845, 854, <u>writ denied</u>, 2023-00352 (La. 9/6/23), 369 So.3d 1267. If the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. *Id.*

As applied to ineffective assistance at sentencing claims, an objectively reasonable standard of performance requires that counsel be aware of the sentencing options in the case and ensure all reasonably available mitigating information and legal arguments are presented to the court. **State v. Harris**, 2018-1012 (La. 7/9/20), 340 So.3d 845, 858. Under **Strickland**, counsel is not required to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing, nor is counsel required to present mitigating evidence at sentencing in every case. **Wiggins v. Smith**, 539 U.S. 510, 533, 123 S.Ct. 2527, 2541, 156 L.Ed.2d 471 (2003). Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart of **Strickland**. **Wiggins**, 539 U.S. at 533, 123 S.Ct. at 2541.

On appeal, the defendant asserts that because the trial court failed to order a pre-sentence investigation report, his trial counsel should have advocated for an appropriate sentence at the sentencing hearing. The defendant contends his counsel

15

was ineffective for failing to submit a sentencing memorandum, failing to argue or present any mitigating evidence, and failing to call any witness to testify. Specifically, he claims his counsel should have presented the following mitigating evidence: (1) he worked as a first responder and firefighter for thirteen years; (2) he was a lifelong resident of Lafourche Parish; (3) he was a father to two young children; (4) he was employed as a foreman in Geismar and held steady employment for twenty years; (5) his longest period of incarceration prior to his arrest on these charges was two years, of which he served five months; and (6) he did not cause the accident herein. Citing **Harris**, the defendant asserts his counsel was clearly deficient, and thus, his sentence should be vacated and the case remanded for resentencing.

In **Harris**, 340 So.3d at 858, the Louisiana Supreme Court held counsel at sentencing could be ineffective for failing to investigate mitigating circumstances. The defendant in **Harris** contended his attorney was ineffective at sentencing because he failed to argue for a downward departure from a mandatory life sentence under the habitual offender statute. In agreeing with the defendant, the Court noted counsel does not adequately represent his client when he fails to conduct a reasonable investigation into factors which may warrant a downward departure from the mandatory minimum. *Id.*

The Third Circuit Court of Appeal relied on **Harris** in finding a defendant received ineffective assistance of counsel at sentencing, where counsel failed to investigate or present mitigating evidence. **State v. Forrester**, 2021-140 (La. App. 3rd Cir. 10/6/21) 329 So.3d 379, 382-83. The defendant therein faced a sentence of twenty-five to ninety-nine years, and the trial court imposed the maximum sentence. *Id.* at 383. During the sentencing hearing, counsel admitted he had no knowledge of the case and had not reviewed the defendant's file prior to the hearing. Thus, the

appellate court found counsel's complete failure to represent the defendant constituted ineffective assistance. *Id.*

This Court reviewed a defendant's claim that he received ineffective assistance of counsel at sentencing because his counsel failed to present mitigating evidence in **Anderson**, 2023 WL 7270839. Therein, the defendant was convicted of DWI fourth offense stemming from a car accident in which he injured a pedestrian. **Anderson**, 2023 WL 7270839 at *1. The defendant faced a sentence of ten to thirty years, and the trial court imposed a fifteen-year sentence. Immediately after sentencing, defense counsel informed the trial court of the several mitigating factors. The trial court maintained the sentence but recommended substance abuse treatment during incarceration, noting successful completion could affect the defendant's period of incarceration. **Anderson**, 2023 WL 7270839 at *5. On appeal, this Court found no deficiency in counsel's performance based on the mitigating factors presented to the court, as the trial court subsequently considered the factors. This Court further concluded the defendant failed to show the sentence would have been different, as the trial court did not alter the sentence after counsel presented the mitigating evidence. *Id.*

We find the instant case distinguishable from **Harris, Forrester,** and **Anderson**. Herein, the defendant was not subject to a mandatory life sentence like the defendant in **Harris**. Rather, he was subject to a term of one to five years imprisonment for his negligent homicide conviction, and the trial court imposed the maximum sentence. Further, unlike **Forrester**, the defendant's counsel represented him from the time of his arraignment through sentencing. Thus, his counsel was not unfamiliar with the defendant and the case. See **State in Interest of H.B.**, 2022-157, 2022-221 (La. App. 3rd Cir. 10/19/22) 350 So.3d 214, 232, writ denied, 2022-01691 (La. 2/7/23), 354 So.3d 672.

17

However, we are troubled by the fact that counsel did not present any argument or mitigating evidence at the sentencing hearing. After the State presented numerous victim impact statements from the victims' families and friends, defense counsel simply stated the defendant would not make a statement and was ready to waive sentencing delays and proceed with sentencing at that time. Unlike **Anderson**, there is no indication in the record the trial court was aware of any mitigating factors in this case. Moreover, the trial court did not have access to a pre-sentence investigation report, which would have included information regarding the defendant's criminal history, his family situation and background, economic and employment status, education, and personal habits. See La. C.Cr.P. art. 875(A)(1). While the trial court was aware of the defendant's criminal history, it is unclear whether it was aware of the defendant's family situation and employment status, which the defendant contends his counsel should have presented to the trial court. Cf. **State v. Zackery**, 53,058 (La. App. 2nd Cir. 11/20/19) 285 So.3d 499, 506 (appellate court reviewed defendant's ineffective assistance claim on ground that counsel failed to present mitigating evidence, where evidence was presented at various pre-trial hearings and trial court had access to pre-sentence investigation report including evidence).

Considering the above, we find appellate review of the defendant's ineffective assistance of counsel claim is limited by the record. Cf. **Anderson**, 2023 WL 7270839 at *5. Accordingly, this claim is more properly relegated to post-conviction proceedings, where the trial court may conduct a full evidentiary hearing. See **Anderson**, 357 So.3d at 854.

## PATENT ERROR

Pursuant to La. C.Cr.P. art. 920(2), this Court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117

18

(La. App. 1st Cir. 11/3/23) 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24) 385 So.3d 242. Our review has revealed several patent errors.

On count one, the defendant was convicted of negligent homicide. Although the sentencing transcript reflects the defendant was convicted of negligent homicide, the sentencing minutes and the uniform commitment order reflect the defendant was convicted of vehicular homicide on this count. Where there is a discrepancy between the transcript and a minute entry and/or commitment order, the transcript prevails. **State v. Lynch**, 441 So.2d 732, 734 (La. 1983); see also **State v. Johnson**, 2020-0679 (La. App. 1st Cir. 4/28/21) 2021 WL 1662420, *6 n.4 (unpublished), writ denied, 2021-00802 (La. 10/5/21) 325 So.3d 381. Because this error has the potential to cause prejudice to the defendant, we instruct the trial court to amend the minute entry and commitment order to accurately reflect the defendant's negligent homicide conviction and to transmit a corrected commitment order to the Department of Corrections Legal Department. See **State v. McMooain**, 2014-1067 (La. App. 1st Cir. 3/6/15) 2015 WL 997164, *4 (unpublished), writ denied, 2015-0655 (La. 2/26/16) 187 So.3d 467.

On each count of vehicular homicide (counts two and three), the trial court failed to impose a mandatory fine of not less than two thousand dollars nor more than fifteen thousand dollars. The trial court also failed to order the defendant to participate in a court-approved substance abuse program. See La. R.S. 14:32.1(B).

Additionally, the trial court failed to impose the statutorily required restriction of benefits on each count of vehicular homicide (counts two and three), as well as for operating a motor vehicle while intoxicated, fourth offense (count four). For each count of vehicular homicide, at least five years of the sentence must be served without benefit of parole, probation, or suspension of sentence, as the jury specifically found the defendant's blood alcohol concentration level was 0.15 percent or more. See La. R.S. 14:32.1(B). For operating a motor vehicle while

intoxicated, fourth offense, at least two years of the sentence must be served without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:98.4(A)(1). Therefore, the trial court's sentences on these counts are illegally lenient.

We note neither the State nor the defendant has raised these errors on appeal, and the sentences are not inherently prejudicial to the defendant. However, because the trial court has discretion in assessing the amounts of the fines imposed and the period of time in which the defendant's sentences are to be served without parole eligibility, we remand for resentencing on counts two, three, and four. On remand, the trial court is instructed to impose a fine and to order the defendant to participate in a court-approved substance abuse program for each count of vehicular homicide pursuant to La. R.S. 14:32.1(B).[8] The trial court is further instructed to specify the amount of time to be served without benefits for each count of vehicular homicide, as well as for operating a motor vehicle while intoxicated, fourth offense. See **State v. Robertson**, 53,970 (La. App. 2nd Cir. 6/30/21) 322 So.3d 937, 946-47; **State v. Bennett**, 2016-432 (La. App. 3rd Cir. 12/7/16) 208 So.3d 898, 900.

Finally, the trial court also failed to advise the defendant of the applicable time period to file an application for post-conviction relief pursuant to La. C.Cr.P. art. 930.8. We instruct the trial court to notify the defendant of this time period at resentencing.

## CONCLUSION

For the above reasons, we affirm the convictions and the sentence on count one with instructions to amend the minute entry and uniform commitment order. We vacate the sentences and remand for resentencing on counts two, three, and four with instructions.

---

[8] We note the trial court waived the mandatory fine for the defendant's conviction of driving while intoxicated with no objection from the State. However, the trial court did not discuss or waive the mandatory fines for the defendant's convictions for vehicular homicide. On remand, the trial court is not prohibited from also waiving these fines, but it must comply with La. C.Cr.P. art. 875.1.

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT ONE AFFIRMED WITH INSTRUCTIONS; SENTENCES VACATED AND REMANDED FOR RESENTENCING ON COUNTS TWO, THREE, AND FOUR WITH INSTRUCTIONS.**

21